## Frederick Schweizer

### *v.*

## James M. Tracy.

1. Fraud—*purchase of goods on false representations may be avoided by vendor.* Where a purchaser of goods represented to the vendor that the stock of goods he then had on hand at his place of business, amounted in value to about $4800; that he had a considerable amount of outstanding debts due him; that he did not owe to exceed $500, and this in Louisville, Ky., and that he owed nothing anywhere else, and thereby obtained credit for goods of the value of about $1900, which he had shipped to his father-in-law, in whose name he did business, while the fact was, that at the time he was indebted in about the sum of $5000 to merchants in Chicago, for goods before sold to him, some of which was then due, and did not have the amount of goods he represented: *Held*, that no title to the goods sold him on the faith of these false and fraudulent representations passed, but that the purchase was voidable, at the option of the vendor, on the ground of fraud.

2. Same—*right of innocent purchaser from fraudulent vendee.* Where a person who has purchased goods upon false and fraudulent representations sells them to an innocent purchaser for value, before they are reclaimed by the vendor, such innocent purchaser will acquire a valid title.

3. Same—*right of an attaching creditor of the fraudulent vendee.* But an attaching or judgment creditor does not stand in the position of an innocent purchaser, as he parts with nothing in exchange for the property, and does not take it in satisfaction of his debt. He takes no greater

interest, or better title in the property than his debtor has, and if the debtor has purchased by means of false and fraudulent representations, his vendor may reclaim the goods by replevin against the officer seizing them under attachment or execution.

4. SAME—*distinguished from the case of Burnell* v. *Robertson*, 5 Gilm. 282. In *Burnell* v. *Robertson*, 5 Gilm. 282, the debtor had a valid title to the property attached, and the controversy was between an attaching creditor and a prior purchaser from the debtor, who had not obtained possession of the property, and the court there treated the attaching creditor as a subsequent purchaser having first obtained possession. But this case is distinguishable from that in this, that the debtor's title was fraudulently obtained, and liable to be avoided by his vendor.

5. ERROR—*admission of evidence.* Where a deposition taken in another suit was permitted to be read in evidence against a party's objection, and it did not appear that its admission injured the party objecting, it was *held*, no ground of reversal.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

This was an action of debt, by James M. Tracy, coroner of Champaign county, for the use, etc., against Frederick Schweizer, impleaded with Mack, Stadler & Co., of Cincinnati, Ohio. The latter were not served. The facts of the case are stated in the opinion of the court.

Messrs. HOADLY, JOHNSON & COLSTON, for the appellant.

Messrs. SWEET & DAY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit upon a replevin bond, which had been given by appellant as surety, and Mack, Stadler & Co., as principals, in an action of replevin, commenced by the latter in the circuit court of Champaign county, on the 22d day of October, 1872, to recover a lot of merchandise previously sold by them, and then in the possession of the sheriff of said county, taken under a writ of attachment against the vendee of the goods from Mack, Stadler & Co., sued out October 18, 1872. Mack, Stadler & Co. having been nonsuited in their action,

a return of the property replevied awarded, and failure therein, this suit was brought against the principals and surety in the replevin bond. No service, however, was had upon Mack, Stadler & Co., nor did they enter their appearance.

Appellant pleaded, in substance, to the declaration, under the statute in that behalf, that the merits of the suit in replevin were not determined in that suit, and that at the time of the commencement thereof, and now, Mack, Stadler & Co. were, and are, the absolute owners of the goods replevied, and entitled to the possession of the same. Upon replication filed, traversing the fact of such ownership and right of possession, issue was joined, and upon trial by the court without a jury, it was found in favor of the plaintiff below, and judgment rendered for $1198.58 damages, from which defendant appealed.

It is first objected that the court below erred in admitting in evidence, against the objection of the defendant, the deposition of Isaac H. Mack, one of the firm of Mack, Stadler & Co., which had been taken in the replevin suit. Upon perusal of the deposition, we do not discover in it anything of such injurious effect to appellant as should cause a reversal of the judgment, even were the deposition improperly admitted in evidence. We will not, therefore, stop to discuss the question of its admissibility.

It is further assigned for error that the finding of the court below is contrary to the law and evidence.

The record discloses that Mack, Stadler & Co. were wholesale dealers in clothing in the city of Cincinnati; that one C. K. Weil, doing business in the town of Urbana, in this State, in the name of his father-in-law, Moses Block, purchased at the store of Mack, Stadler & Co., on the 6th of September, 1872, the goods which were afterwards replevied, in value about $1900, on credit, stating to them that the stock which he then had on hand at Urbana amounted in value to about $4800; that he had a considerable amount of outstanding debts due him; that he did not owe to exceed $500,

and this in Louisville, and that he owed nothing anywhere else. The fact was, that Weil was, at the time, indebted in about the sum of $5000 to merchants in Chicago for merchandise sold to him prior to the purchase from Mack, Stadler & Co., some of which indebtedness had become due, and the inability to obtain further credit there had induced him to resort to the Cincinnati market, for the purpose of getting goods on credit.

We have no doubt, from the evidence, that the representations as to the value of the Urbana stock, and the amount of the indebtedness thereon, were false and fraudulent, and that the goods were sold upon the faith of these representations, and that no valid title passed to the purchaser, but that the purchase was voidable, at the option of the vendors, on the ground of fraud in the making of it, whilst the property remained in the hands of the vendee.

The point is made, by appellee, that Weil was doing business in the name of Block, and so known by Mack, Stadler & Co., and that they shipped the goods in the name of Block, and that these circumstances should, in some way, disentitle Mack, Stadler & Co. to question the validity of the purchase from them.

Whether Weil was acting either for himself or as agent for Block, is immaterial. In either case, the effect upon the sale, of the fraud and false representations, would be the same; it being manifest that the goods were not parted with because of the credit given to either Weil or Block, but because of the representations of the value of the Urbana stock, and the amount of the indebtedness thereon.

But it is supposed that there was fraud here on the part of Mack, Stadler & Co., in assisting Weil to perpetrate a fraud upon the community, which should debar their right to avoid the sale. The matter of the use of Block's name by Weil in the manner it was, was understood by the Chicago creditors, as well as by Mack, Stadler & Co. It was not shown how any one was defrauded, or likely to be so, by the

conduct of Mack, Stadler & Co.    They simply knew that
Weil was carrying on business in the name of Block, and
bought and requested the goods to be shipped in the name of
the latter; that Weil was owing some $500, and perhaps that
Block was insolvent.

We discover nothing in this which should deprive Mack,
Stadler & Co. of redress for a fraud practiced upon them in
the purchase of the goods.

Coming, then, to the conclusion, which we do, that had
Mack, Stadler & Co. discovered the fraud practiced upon
them whilst the goods remained in the hands of the fraudu-
lent vendee, and replevied them, they could have successfully
maintained their action, the question is presented, whether
the attaching creditors here, or the sheriff, by virtue of his
writ of attachment, acquired any other or greater title than
the fraudulent vendee possessed.

Had the vendee, before the reclaiming of the goods by
Mack, Stadler & Co., sold them to an innocent purchaser for
value, no doubt, under the decisions of this court, the pur-
chaser would have acquired a valid title to the goods.    *Jen-
nings* v. *Gage et al.* 13 Ill. 610; *M. C. R. R. Co.* v. *Phillips
et al.* 60 id. 190; *Young et al.* v. *Bradley et al.* 68 Ill. 553.
The case of *Burnell* v. *Robertson,* 5 Gilm. 282, is cited as
sustaining the doctrine that an attaching creditor stands in
the light of a purchaser, and is to be protected as such. That
was a case where a debtor had title to the property, and the
controversy was between a prior purchaser from the debtor,
who had not obtained possession of the property, and a sub-
sequent attaching creditor; and in reference to such a state
of facts, the court say:  " In case of two sales of personal
property, both equally valid, his is the better right who first
gets possession of the property, and the attaching creditor
stands in the light of a purchaser, and is to be protected as
such."    That is, the attaching creditor stands in the light of
a purchaser, not necessarily as against the world, but as
against another purchaser, the creditor having, by virtue of

his attachment, first obtained possession of the property; thus acknowledging the common doctrine respecting the sale of personal property, that a sale without the delivery of possession. is void as against subsequent purchasers and creditors. This is the full import of that decision.

But in the case at bar, the only title of the debtor is one acquired by fraud and false representations, and voidable at the option of his vendors. The general expression used in the case cited is to be understood with reference to the facts of that case, and is not authority in support of the view that an attaching creditor, under the circumstances of such a case as the present, *as against the vendor*, stands in the same position as an innocent purchaser for value.

In *Martin* v. *Dryden et al.* 1 Gilm. 188, where there had been a sale and conveyance of real estate, but the deed not recorded, this court held that an attaching creditor, without notice of the prior deed, would hold the land as against the prior purchaser; but that was under our recording act, containing the provision that all deeds and title papers shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and as to them, all such deeds and title papers shall be adjudged void, until the same shall be filed for record in the county where the land may lie. Gale's Stat. 664, sec. 5.

In the cases above cited, the attachments were sustained against prior purchasers in obedience to plain rules of law. In the first case, the rule of the common law made the prior sale of the goods without the delivery of possession, void as against creditors. In the second case, a statutory enactment declared the prior deed void as to creditors until it was recorded.

But in the case before us, the attaching creditor has no such plain rule of law to invoke in his behalf. He can cite the doctrine that where personal property has been obtained

by means of a fraudulent purchase, a *bona fide* purchaser there-of from the fraudulent vendee, for a valuable consideration, without notice, will acquire a good title; but that does not embrace the case of a mere attaching creditor. He can not be regarded as such a purchaser, or be viewed like a mort-gagee, who is considered a *quasi* purchaser. The claim of an attaching creditor to protection is not of equal strength with that of a *bona fide* purchaser for a valuable consideration. He parts with nothing in exchange for the property, nor does he take it in satisfaction of any precedent debt. The prop-erty is merely seized for the purpose of having it afterward so appropriated. The attaching creditor, by means of his attachment, obtains but a lien. It is a well settled rule, cer-tainly of equity, that the general assignees of a bankrupt take his estate subject to every equitable claim which exists against it by third persons; and so it is with judgment cred-itors, as respects the lien of their judgments. *Ex parte Howe,* 1 Paige, 125.

As to such assignees, the Supreme Court of the United States say: In cases like this the assignee stands in the place of the bankrupt; his rights are their rights; and theirs, like the lien of judgments at law, are subordinate to all the prior liens, legal and equitable, upon the property in question. *Gibson* v. *Warden,* 14 Wall. 249.

In *Tousley* v. *Tousley,* 5 Ohio St. 78, it was held that a judgment creditor is not a purchaser, nor entitled to the privileges of that position. It is there said: So far as the statute goes, in giving him (a judgment creditor) a preference over mortgages not perfected by delivery to the recorder, his rights are absolute, but for everything else, he is remitted to general principles; and upon general principles, it is very clear that he acquires a lien only upon the interest of his debtor, and is bound to yield to every claim that could be successfully asserted against him. See also, Drake on Attach-ment, sec. 220; *Nathan* v. *Giles,* 5 Taunt. 558.

The only difference, as affects the present question, between the lien of a judgment, and one acquired by attachment, is, that one is general and the other specific. We are unable to see that this distinction should change the rule in its application to a case like the present. Nothing was here attached but the interest of the debtor and fraudulent vendee in the property seized. He had not an absolute title, but only a voidable one, subject to be avoided by the defrauded vendors. The same right of avoidance of the fraudulent purchase which they had against the fraudulent vendee himself, we are of opinion, existed against his attaching creditors. Had he made an assignment of the property for the benefit of these attaching creditors, the assignee would have taken only such interest as the assignor had in the property—his voidable interest. We can not see upon what principle the creditors could acquire any greater interest by the levy of an attachment to secure the payment of their claims, than they would have done by a voluntary conveyance made by the debtor himself for the same purpose. It is the general rule, that a better title is not obtainable from any one than he possesses. There are exceptions, but the levying of an attachment comes within none of the recognized exceptional instances, where one can acquire from another a greater interest in property than such other himself possesses.

We perceive no laches on the part of the vendors in the exercise of their right of avoiding the sale.

It follows, then, that the right of possession and property in the goods was in Mack, Stadler & Co., that their suit of replevin was rightly brought, and that there is no liability upon the replevin bond for the non-return of the property replevied.

The finding and judgment of the court below being manifestly against the evidence, the judgment is reversed.

*Judgment reversed.*