## GEORGE CATLIN
### v.
## CHARLES WARREN ET AL.

1. VENDOR AND VENDEE.—Although a sale of goods is void as between the vendor and vendee, if the fraudulent vendee sell and deliver the goods to a *bona fide* purchaser without notice of the fraud, the sale will pass a good title.

2. TRESPASS.—Trespass will not lie against one who came into possession of goods by delivery and without fault on his part, although it may turn out that the person who made the delivery had no title, and was a wrong-doer.

3. FRAUDULENT VENDEE.—If a vendee purchase goods on credit with the preconceived design, or with the intention at the time never to pay for them, the purchase is fraudulent. There must be a positive and predetermined intention entertained and acted upon at the time of going through the forms of an apparent sale, never to pay for the goods. As the instruction given was not in accordance with the above, it was erroneous.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding. Opinion filed May 29, 1885.

This action was replevin in the *cepit*, brought below by appellees, Warren & Co., against appellant, Catlin, and George Ryall. The declaration contains one count in replevin, as

Catlin v. Warren.

aforesaid, and one in trover. The defendants pleaded *non cepit* and property in Catlin, to the count in replevin, and not guilty to that in trover; on which issue was taken. There was a trial resulting in a verdict under the issues upon the count in replevin, in favor of plaintiffs, finding property in them and one cent damages. Between the time of the verdict and judgment, plaintiffs dismissed as to Ryall, and the court, overruling Catlin's motion for new trial, gave judgment on the verdict against Catlin, from which he prosecutes this appeal.

The evidence shows that Ryall had been carrying on the business of druggist in the city of Chicago, and Warren & Co. were merchants in the city of Baltimore, Md., but had an agent residing in Chicago; that Nov. 14, 1883, Ryall bought of plaintiffs, through said agent, the goods in question, which were sent to the former from Baltimore; that some eleven days after said purchase, Catlin, who had, so far as the evidence shows, no connection with or knowledge of said purchase, either before. or at the time it was made, bought of Ryall the whole stock in his drug store, including the goods so purchased of plaintiffs, which were invoiced at their fair value, and amounted to eight thousand dollars. It appears that Ryall had previously borrowed three thousand dollars of Catlin, without security, on which loan twelve hundred dollars remained unpaid. Ryall had become then so financially embarrassed as to be unable to go on with his business. Judgments had been entered up against him in favor of different parties, aggregating some twelve thousand eight hundred dollars. So he gave Catlin a note and warrant of attorney for the balance owing him, and judgment was entered upon it. Catlin then bought in all the other judgments against Ryall and applied these, with his own judgment, in payment of the purchase price of said stock, took a bill of sale of goods and possession, and was so in possession when the goods in question were taken from him by the writ of replevin in this case.

There was no evidence tending to show that Ryall made any representations of any kind, or used any artifice or trick

in making the purchase of plaintiffs, nor was there any evidence tending to show any circumstance attending the transaction, or tending to show that Ryall purchased the goods with a preconceived design, or with the intention of never paying for them. The court, at the instance of the plaintiffs, gave to the jury the following instructions:

1. "If a merchant buys goods upon credit without intending to pay for them, this is a fraud upon the seller and will entitle him to avoid the contract of sale, and bring an action of replevin in disaffirmance thereof, based on that fraud, unless the goods have been sold to a *bona fide* purchaser. And in determining whether or not such fraudulent intent existed, the jury have a right to consider all the circumstances relating to purchase which are shown in evidence; for while fraud must be proved and can not be presumed without proof, it may be proved by inference drawn from the facts and circumstances in evidence connected with the transaction and the parties to it, if such facts and circumstances tend to show such intent.

2. "A *bona fide* purchaser is protected only to the extent of the consideration paid or agreed to be paid when he became aware of the weakness of his vendor's title. If, therefore, you find from the evidence that Ryall bought the goods in controversy with the fraudulent purpose of not paying for them, and sold them, with others, to Catlin and that when they were taken from Catlin by the sheriff, under the replevin writ, he had paid but about $1,700 on account of such sale to him, and that the said goods so purchased were worth more than the aggregate amount of the claim of Hurlbut, Hess & Co., Catlin's claim, and the value of the goods in controversy, then the plaintiffs are entitled to recover, unless you further find from the evidence that at the time the goods were so taken from Catlin, he had become bound in law to pay such further sum or sums as would make the amount paid or agreed to be paid by him equal to the value of the goods so transferred to him."

Mr. A. M. McConougney, for appellant; cited Mason v.

Catlin v. Warren.

Trustees, 11 Bradwell, 454; Pittman v. Sofley, 64 Ill. 155; Sugden on Vendors, 1040; Wade, Law of Notice, 16; Clubb v. Wise, 64 Ill. 157; Anderson v. Warner, 5 Bradwell, 420; Dudley v. Danforth, 61 N. Y. 626; Herkelrath v. Stookey, 63 Ill. 487.

To impeach the sale of personal property it is necessary to show that both vendor and purchaser designed to delay creditors: Brown v. Riley, 22 Ill. 45; Myers v. Kinzie, 26 Ill. 36; Gridley v. Bingham, 51 Ill. 153; Ewing v. Runkle, 20 Ill. 462.

Messrs. Flower, Remy & Gregory and Mr. H. K. Tenney, for appellees; that where a merchant buys goods on credit without intending to pay for them, this is a fraud which entitles the vendor to rescind the contract of sale, cited Hennequin v. Naylor, 24 N. Y. 139; Byrd v. Hull, 2 Keyes, 647; Johnson v. Monell, 2 Keyes, 655; Devoe v. Brandt, 53 N. Y. 462; Burrill v. Stevens, 73 Me. 395.

McAllister, J. There was no preponderance of evidence in this case, showing a demand upon Catlin for the goods in question before suit brought. The only count in replevin contained in the declaration is in the *cepit*, and under that count alone the plaintiffs recovered. In Barrett v. Warren, 3 Hill (N. Y.), 348, the court, by Bronson, J., says: " Replevin in the *cepit* will only lie where trespass might have been brought, and the demand and refusal must therefore be laid out of view. The question is not whether there has been a conversion of the property, for which the plaintiff might have brought trover, or replevin in the *detinet*, but whether the defendant is chargeable with a tortious taking."

The plaintiffs, in the case at bar, had sold and delivered the goods in question to Ryall. Catlin had no participation in or connection with that sale. Afterward Ryall sold and delivered the same goods, with others, to Catlin.

If the purchase by Ryall had been shown to have been fraudulent, it must be admitted that the plaintiffs would be justified in treating it as a nullity so far as he was concerned;

in which case they could maintain trespass or replevin in the *cepit* against him. This would be upon the theory that although the plaintiffs had delivered the goods to him with the intention of parting with their property therein, yet, because such sale and delivery were obtained by fraud on his part, his reception of the goods would be regarded as a tortious taking. But whether the doctrine is in consonance with correct principles or not, the law is well settled, that although the sale was void as between the vendor and vendee in such case, yet if such fraudulent vendee sell and deliver the goods to a *bona fide* purchaser without notice of the fraud, the sale will pass a good title. Mowry v. Walsh, 8 Cow. 238; Jennings v. Gage, 13 Ill. 610; Chitty on Contracts (10th Am. Ed.), 429, 430, and cases in notes.

It is clear, therefore, that the mere circumstance, if established by the evidence, that Ryall's purchase was fraudulent, would not constitute the reception of the goods by Catlin, under the sale and delivery by Ryall to him, a tortious taking from the possession of the plaintiffs. The general rule is that trespass will not lie against one who came into possession of the goods by delivery, and without fault on his part, although it may turn out that the person who made the delivery had no title, and was a wrong-doer. Barrett v. Warren, *supra*, and authorities there cited; Nash v. Mosher, 19 Wend. 431.

There was no evidence tending to show that Catlin had any complicity with Ryall in making the purchase of plaintiffs, or that, if there was any fraud in that purchase on the part of Ryall, that Catlin had any notice of it. But what evidence was there that Ryall's purchase was fraudulent? Not a circumstance attending the sale was shown. There was no evidence of any false representation, of any trick or artifice on his part, or of any conspiracy between him and Catlin. The case rested solely upon evidence of circumstances tending to show insolvency. If the evidence was sufficient to go to the jury, the latter should have been accurately instructed. We think the first and second instructions for plaintiffs calculated to mislead the jury. By the first they were told as matter of

Catlin v. Warren.

law that, if a merchant buys goods upon credit, *without intending to pay for them*, this is a fraud upon the seller, and will entitle him to avoid the contract of sale and bring an action of replevin in disaffirmance thereof, based on that fraud, unless the goods have been sold to a *bona fide* purchaser.

And in determining whether or not such fraudulent intent existed, the jury have a right to consider all the circumstances relating to the purchase which are shown in evidence.

As to the last clause it will suffice to say that no circumstances attending the sale were shown in evidence. There being no such evidence, it was error to submit the matter to the jury. As to the first branch of the instruction, we regard the rule there laid down as a substantial departure from the true principle of the rule as recognized by the prevailing current of decisions upon the question. The instruction says that " if a merchant buys goods upon credit, without intending to pay for them, this is a fraud." Whereas the rule, which we conceive to be the correct one, is, that if any vendee purchase goods with the preconceived design, or with the intention at the time, never to pay for them, the purchase is fraudulent. By that embraced in the instruction, a mere negative or indifferent state of mind as respects payment, constitutes the sale fraudulent; while by the other, there must be a positive and predetermined intention never to pay for the goods. The distinction can not be better illustrated than by quoting from the opinion of the court in Burrill v. Stevens, 73 Maine, 395, cited by the appellee's counsel: " To constitute fraud, there must be a preconceived design never to pay for the goods. A mere intent not to pay for the goods when the debt becomes due is not enough. A design not to pay according to the contract is not equivalent to an intention never to pay for the goods, and does not amount to an intention to defraud the seller outright, although it may be evidence of such contemplated fraud. Nor is it enough to constitute the fraud that the buyer is insolvent, and knows himself to be so, at the time of the purchase, and conceals the fact from the seller, and has no reasonable expectations that he can ever pay the debt.

" The only intent that renders the sale fraudulent, is a positive and predetermined intention entertained and acted upon at the time of going through the forms of an apparent sale, never to pay for the goods." Citing Cross v. Peters, 1 Greenlf. R. 378; Biggs v. Barry, 2 Curtis, C. C. R. 259; Rowley v. Bigelow, 12 Pick. 306. To which may be added, Noble v. Adams, 7 Taunt. 59; Bristol v. Wilsmore, 1 B. & C. 514; Kilby v. Wilson, R. & H. 178; Ferguson v. Carrington, 9 B. & C. 59; Stewart v. Emerson, 52 N. H. 301; Bidault v. Wales, 19 Mo. 36; S. C. 20 Mo. 546; Wiggins v. Day, 9 Gray, 97; Thompson v. Rose, 16 Conn. 71; Morrill v. Corbin, 13 Bradwell, 84.

The second instruction is bad and misleading in two particulars. First, by the first clause of it, the weakness or defect of Ryall's title, when he sold to Catlin, is assumed by the court. Secondly, the jury are told in substance and effect, that if Ryall bought the goods of plaintiffs with the fraudulent purpose of not paying for them, and sold them with other goods to Catlin, then the plaintiffs were entitled to recover of Catlin, unless he had paid or become bound to pay to Ryall a sum equal to the value of the goods. There is no hypothesis in the instruction, as to whether Catlin was a *bona fide* purchaser, or had notice of the fraud or not. Nor is there any hypothesis upon which Catlin could be held chargeable, as for a tortious taking of the goods, which was indispensable to a recovery in replevin for a wrongful taking.

For the errors indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*