### George M. Custer et al. v. M. L. Harmon.

1. VENDOR AND VENDEE—*Where Vendee Relies upon Superior Knowledge of Vendor.*—Where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to value,

and such representation is not a mere expression of opinion but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound.

2. JUDGMENT BY CONFESSION—*May be Opened upon Application of any Defendant Having a Meritorious Defense.*—An application to open a judgment by confession is always addressed to the equitable as well as to the law powers of the court, and in the exercise of its equitable powers, the court may open it upon the application of any defendant having a meritorious defense to the cause of action upon which it was rendered, whether his co-defendants do or do not join him in such application. ·

**Motion to Vacate a Judgment by Confession.**—Appeal from the Circuit Court of Coles County: the Hon. HENRY VAN SELLAR, Judge presiding. Heard in this court at the May term, 1902. Reversed and remanded with directions. Opinion filed November 1, 1902.

JOHN S. HALL and CRAIG & KINZEL, attorneys for appellants.

BRYAN H. TIVNEN and JAMES F. HUGHES, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

On September 20, 1901, in vacation, after the April term, 1901, of the Circuit Court of Coles County, the clerk of that court, upon proper declaration, cognovit, power of attorney, and affidavit of execution, entered a judgment by confession for $1,604.71 in favor of the appellee, M. L. Harmon, and against the appellants, George M. Custer and Lucy C. Custer, together with G. E. Colson, John R. Hamilton and A. I. Rhue, upon their two promissory notes, and power of attorney in each to confess such judgment. An execution was issued upon the judgment and placed in the hands of the sheriff of said county to execute.

On the first day of the October term, 1901, of said court, the appellants moved the court to stay the execution, vacate the judgment and to grant them leave to plead to the action on the notes. Which motion was supported by an affidavit as follows :

" George M. Custer and Lucy C. Custer, being first duly sworn, upon oath say that they are the defendants in the

above entitled cause, and show to the court that they as principals, and G. F. Colson, John R. Hamilton and A. I. Rhue as their securities, signed two certain notes and warrants of attorney for the sum of eight hundred forty-three and seventy-five hundredths dollars ($843.75) each, both of said notes dated March 2, 1901, and one due on or before six months, and one due on or before twelve months, together with five per cent interest from the date thereof until paid, said notes being payable to ourselves and indorsed by affiants, G. E. Colson, John R. Hamilton and A. I. Rhue, and delivered to the plaintiff, M. L. Harmon.

Affiants further say that on or before the first day of March, 1901, the above named plaintiff, M. L. Harmon, being the owner and possessor of a certain stock of goods situated in the city of Mattoon, and being desirous of selling and disposing of the same to these affiants, entered into a certain written contract with these affiants in regard to the purchase thereof.

Affiants further say that the said written contract contained, among other things, an agreement that these affiants were to purchase said goods, and that the amount they were to pay for the same was the value of said goods and merchandise to be determined by the present worth of the various articles in said stock so sold to these affiants plus ten per cent to be added to the same for some of them and five per cent to be added to others for carriage, and that said merchandise should be invoiced (at the then) present worth, and that said plaintiff, M. L. Harmon, should furnish (the then) present value thereof, and in consideration these affiants were to have said goods and merchandise at the present worth, and relying upon the representations of the said M. L. Harmon that they would be so invoiced, these affiants agreed to convey to said plaintiff a certain tract of land in Wabash county, Illinois, for and in consideration of $————, and when said invoice was completed and the amount in value of the merchandise so ascertained, these affiants were to execute their notes to the said M. L. Harmon for the balance after deducting the value of the lands at the price heretofore agreed upon.

These affiants further say that the said M. L. Harmon had for many years prior to said time been engaged in the mercantile business and was a man well experienced in such business, and well knew the worth and price of each and every article which was to be invoiced to these affiants; and at the time of the invoice knew the present worth of said articles, and each and every one thereof, and what it

should have been invoiced as to these affiants according to said agreement.

These affiants further say that, relying upon the representations of the said M. L. Harmon that these affiants should have said goods (at the then) present worth, and that they were to be invoiced according to said representations, and delivered to these affiants at their present worth, these affiants entered into said written contract with the said M. L. Harmon for the purchase of said goods as aforesaid at their then present worth, and when said invoice was completed, conveyed to the said M. L. Harmon as a part of the consideration thereof said tract of land in Wabash county, Illinois, and executed their promissory notes as above stated, said notes being part of the amount due after the conveyance of said lands, and part secured by second mortgage on hotel, and the invoice of said goods on the valuation of said goods at the cost price as given by the said M. L. Harmon, and for no other consideration whatever.

Affiants further show to the court that they were not experienced in the mercantile business, and had no means of ascertaining what the present worth of the said various articles in said stock was, and that the said M. L. Harmon furnished to these affiants what he said was the cost price and present value of the various articles of goods, and upon said statements so made by the said M. L. Harmon and relied upon by these affiants said invoice was taken, and that the said M. L. Harmon then and there well knew that said statements as to the cost price and present value of the stock of goods so invoiced was not true, and was false and fraudulent, and was made by the said M. L. Harmon for the purpose of cheating and defrauding these affiants, and that these affiants did not know at the time that said invoice was completed and said notes executed; that the said statements and representations made by the said M. L. Harmon as to the present value and cost of said stock of goods was false and fraudulent.

These affiants further show that said contract provided that these affiants were to select one person to invoice, and the said plaintiff, M. L. Harmon, was to select another, and if they could not agree upon said invoice that they would select the third person.

Affiants further show to the court that they were induced and persuaded by the said M. L. Harmon to take the man selected by him as the only person to invoice the queensware in said stock of goods upon the representations that the said man was honest, competent and trustworthy, and

knew the prices and present value of the articles to be invoiced, and that these affiants relied upon the representations so made by the said M. L. Harmon in regard to said invoice, and the representations made by said Harmon and his agent who invoiced said stock of queensware for him.

Affiants further say that some time after they took possession of said stock of goods they ascertained that said representations made by the said M. L. Harmon, the plaintiff, and the person so selected by him to invoice said goods, was not true, and that a large number of said articles were invoiced at double the amount of the present worth of the same so listed, and on said invoice and calculations made thereon these defendants executed said notes in question, and that there is no other consideration for the execution of said notes except the invoice of said merchandise as aforesaid.

Affiants further say that they have ascertained from investigation and invoices and from interviews with parties from whom the said goods were purchased that all of said goods were invoiced to these affiants at from 5 to 100 per cent in excess of the present value at the time of said invoice, and that they expect to prove by the persons from whom said goods were purchased, the above and foregoing facts on a trial of said cause.

Affiants further say that the amount of the excess which was figured on the invoice of said stock and for which these notes were executed in excess of the present worth of the goods at the time of said sale and invoice, amounts to about fifteen hundred (1,500) dollars, and that these affiants have a just and meritorious defense to said notes for a failure of consideration to the extent of said fifteen hundred (1,500) dollars, or more.

Affiants further say that if they are permitted to file pleas to said suit and make a defense on the trial of said cause that they will swear to the above and foregoing statements and facts, and they expect to prove the same by the persons of whom the said M. L. Harmon, the plaintiff, bought the merchandise which was invoiced to them.

Affiants further say that on the 20th day of September, 1901, the said M. L. Harmon caused a judgment to be entered in the Circuit Court of Coles County by a confession against these affiants, and said G. F. Colson, John R. Hamilton and A. I. Rhue, for the sum of sixteen hundred four and seventy-one hundredths dollars ($1,604.71) and costs of suit, and on the same day caused an execution to be issued out of the clerk's office of said county on said

judgment so taken, and that said execution is now in the hands of the sheriff of Coles county.

These defendants show to the court that said judgment so taken by the plaintiff on the 20th day of September, 1901, was entered by the clerk of this court upon copies of the alleged notes executed, and not upon the original, reference being had to the files in said case, which is made a part of this affidavit; and affiants say that they have examined said files and that the signatures to said papers so on file are not the signatures of these affiants, or the said G. E. Colson, John R. Hamilton or A. I. Rhue.

Affiants further show that the said copy of said notes, or what purports to be a copy of said notes, is not a copy of the notes signed by these affiants.

Affiants further say that the notes signed by them and the other defendants in the above entitled cause contained no provisions for attorneys' fees; that that portion of the copy of said notes which reads as follows—'And 5% of the face of this note as attorneys' fees' was erased from the same, and is not part of the original notes.

Affiants further show that said judgment includes the sum of seventy-four and thirty-seven hundredths dollars ($74.37) for attorneys' fees, while said notes executed by these affiants and the other defendants contained no provision whatever for any attorneys' fees to be included in said judgment or otherwise.

These affiants therefore pray that said execution may be stayed, and that the judgment may be set aside, and that these affiants may be allowed to plead, and that this application is not made for delay, but that justice may be done."

The court allowed the motion and entered an order "that the execution be stayed, and that the judgment be opened to plead, saving the lien of the judgment for the benefit of any final judgment that may be recovered." After which, by leave of court, the appellee filed two additional counts to his declaration upon the two notes in question, and the appellants pleaded the general issue and a special plea. A demurrer was sustained to the special plea, and upon leave being given, it was amended the third time, when it read as follows:

" And for further plea in this behalf, the defendants say that the plaintiff ought not to have his aforesaid action

against them, the defendants, because they say that the
several supposed causes of action in the said declaration
mentioned are one and the same, to wit, the supposed
cause of action in the said first count mentioned, and not
different causes of action; that on, to wit, the second day of
March, 1901, the plaintiff, being the owner and proprietor of
a store containing a stock of queensware, dry goods and
notions, in the city of Mattoon, county and state aforesaid,
entered into a written contract with the defendants, by vir-
tue of which contract said defendants were to purchase said
merchandise of the plaintiff, the value thereof to be esti-
mated by invoice thereof at the present worth, and the
defendants were to convey to the plaintiff, as consideration
of said purchase, a certain tract of land containing eighty-
nine acres in Wabash county, Illinois, and when the
invoice of said queensware, dry goods and notions was
made at present worth, and the amount in value ascer-
tained by said invoice, these defendants were to execute
their notes to the plaintiff for the excess as ascertained by
said invoice above the value of defendants' equity in said
land, which equity was estimated at two thousand five hun-
dred ten (2,510) dollars.

And these defendants aver that it was also provided in
said contract that said stock of queensware, dry goods and
notions should be invoiced at their then present worth, and
ten per cent should be added to all queensware and lamps
and goods on the west side of the room in which said goods
were then contained, and that five per cent was to be added
to all other goods, for carriage.

And these defendants aver that the said plaintiff was at
that time and had for many years prior to said time been
engaged in the mercantile business, and the purchase and
sale of the articles which were sold and about to be invoiced,
and had purchased said articles so sold to the defendants,
and was experienced and knew the present worth of each
and every article to be invoiced, and that these defendants
were inexperienced in said business and did not know the
present worth of said goods, and had no experience in said
mercantile business or the purchase and sale of said goods;
and that the said plaintiff knew that the said defendants
were not experienced in said business and did not know the
present worth of said goods about to be so invoiced.

And these defendants aver that it was also provided in
said contract that the value of said stock of goods was to
be estimated by invoice by disinterested persons, each party
to select one person, and these two to select a third compe-

tent person in case they could not agree, and that said invoice was to be made at the then present worth of said merchandise.

And these defendants aver that the plaintiff represented to them that the plaintiff and the person so selected by the plaintiff knew the present worth of the said goods, and said person, together with the plaintiff, could and would make a true, correct and proper invoice of said goods at their then present worth, and in accordance to the terms of said contract.

And these defendants aver that they relied upon representations that the plaintiff and the persons so selected by the plaintiff knew the present worth of said goods to be so invoiced, and that they, together with plaintiff, could and would make a true, correct and proper invoice of said goods at their present worth, according to the terms of said contract, if accepted by defendants.

And the defendants aver that said representations made by the plaintiff that said person so selected by him to invoice said goods would make a true and correct invoice of said goods was false and known by him at the time he made them to be false and made with intent to prevent the defendants from selecting any person on their part to invoice said goods, so that said goods would be invoiced at a much greater value than their present value, which was unknown to the defendants at the time they consented thereto.

And the defendants aver that before said appraiser had been selected, the plaintiff and said appraiser conspired and agreed together that they would induce the defendants to accept an appraisement by them by representations that the plaintiff and the person so selected by him could and would make a true and proper and correct invoice of said goods, which representations were false and known to be false when made by plaintiff and said person so selected by him, but were relied upon by defendants, and when so accepted, conspired and agreed they would invoice said goods at a higher price than the price fixed in said contract, and so said plaintiff and said appraiser by collusion and with intent to perpetrate a fraud upon the defendants, induced them to accept said appraiser upon said false representations, and in pursuance of said collusion knowingly and purposely invoiced said stock to defendants at a price greatly in excess of the price agreed upon in said contract, at, to wit, $5,885, when the true value was only, to wit, $3,500.

And these defendants aver that the plaintiff and said appraiser so selected by the plaintiff to invoice said goods, well knowing that said goods were not worth more than three thousand five hundred (3,500) dollars at their then present value, and well knowing that said contract provided that said goods should be invoiced at their then present value, knowingly, falsely and fraudulently invoiced said stock of goods at the sum of five thousand eight hundred and eighty-five (5,885) dollars; that after said invoice was completed, falsely and fraudulently and knowingly represented to these defendants that they had invoiced said goods at their present worth and that the present worth of said goods so invoiced was five thousand eight hundred eighty-five (5,885) dollars, when in truth and in fact the said plaintiff and the said person so selected by him to invoice said goods then and there well knew that the present value of said goods so invoiced was only three thousand five hundred (3,500) dollars, and knowingly, falsely and collusively made and represented the present value of said stock of goods by said invoice at the sum of five thousand eight hundred eighty-five (5,885) dollars for the purpose of procuring the execution of the notes of the plaintiff sued on, when the said plaintiff and said person so selected by him to appraise said goods then and there well knew that the true invoice of the present value of said goods was only three thousand five hundred (3,500) dollars.

And these defendants further aver that at the time of the execution of said notes they did not know and have no means of knowing the value of said goods was not five thousand eight hundred eighty-five (5,885) dollars, or that the invoice made by the said plaintiff and the said person so selected by him that said stock of goods was worth five thousand eight hundred eighty-five (5,885) dollars was false and fraudulent, or that their present value was only three thousand five hundred (3,500) dollars, and had no means of ascertaining that said invoice was falsely and fraudulently made at the time of the execution of said notes.

And these defendants aver that, relying upon said false and fraudulent invoice so collusively made by the said plaintiff and appraiser as being the present worth of said goods, and not knowing that the present worth of said goods was only three thousand five hundred (3,500) dollars, and upon said false and fraudulent representations collusively made by the plaintiff and said appraiser that said invoice of said goods at five thousand and eight hundred eighty-five (5,885) dollars was the invoice at their present

worth and was a true invoice and according to contract, when in truth and in fact said present worth of said goods was three thousand five hundred (3,500) dollars, which was then and there well known to the plaintiff and to the said person so selected by him to so invoice said goods.

And relying upon the calculations made on said invoice as being their present worth, and the ten per cent and five per cent heretofore provided being added for carriage, and having deducted first therefrom the value of said tract of land which was thereupon conveyed by these defendants to the plaintiff, these defendants executed the notes set forth in plaintiff's declaration for the excess in value of said land, and that there is no other consideration for the execution of said notes than the invoice heretofore set forth.

Wherefore these defendants say that the consideration upon which said notes were made has wholly failed, and this the defendants are ready to verify; wherefore they pray judgment if the plaintiff ought to have his aforesaid action."

It was then especially demurred to for the following reasons:

" That the allegations of fraud therein alleged are insufficient, because not allegations of fraudulent representations as to any present existing or past fact at the time such representations purport to have been made; that there is no allegation in said plea, of care or diligence on the part of defendants, Custer and Custer, to protect and guard their interests in the transaction in the plea mentioned; that there is no allegation of artifice or device on the part of the plaintiff to mislead or deceive the defendants, Custer and Custer, from exercising proper care and diligence for the protection of their interests in such transaction, and that said plea fails to affirmatively allege that a third person was selected and agreed upon by the parties to make the invoice mentioned in the plea, and that the plea fails to name any person selected as appraiser, and that the defendants agree to and did accept the appraiser named by the plaintiff as alleged in the plea, and that the values placed on the articles in said plea by appraisers were mere matters of opinion, and that said plea is in other respects informal and insufficient," etc.

And the demurrer was sustained.

The appellants stood by their special plea, as thirdly amended, withdrew the general issue, and the court entered

an order reinstating the judgment and execution, and the appellants excepted.

The appellants prosecute an appeal to this court, and to reverse the order of the court reinstating such judgment and execution, insist that the court improperly sustained the demurrer to the special plea as thirdly amended.

The appellee assigns cross-errors calling in question the entry of the order staying the execution, opening the judgment, and giving the appellants leave to plead, alleging that the affidavit of the appellants in support of their motion for the order was insufficient to warrant the entry of the same.

It is very apparent from reading the affidavit that if the facts there stated were sufficient to warrant the court in entering the order to stay the execution, to open the judgment and giving leave to plead, then the special plea, as thirdly amended, setting up the same facts as a defense to the action on the notes, should have been sustained, and it was error for the Circuit Court to hold that the plea was bad.

Under the doctrine laid down in Murray v. Tolman, 162 Ill. 417, and Snively v. Meixsell, 97 Ill. App. 365, we think the facts set up in the affidavit and alleged in the plea, constitute a good defense to the action on the notes, for the reason that such facts show that the appellants are in a position to invoke the rule that "where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to value, and such representation is not a mere expression of opinion but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound."

And it was therefore error for the court to sustain the demurrer to the plea.

It is further insisted that the court improperly entered the order to open the judgment at the instance of the appellants only when there were others against whom it

was also rendered, who did not join in such application, and that the order of the court reinstating the judgment, for that reason worked no prejudice against the appellants.

But in that view we can not concur, because it is clear that an application to open a judgment by confession is always addressed to the equitable as well as to the law powers of the court, and in the exercise of its equitable powers, the court may open it upon the application of any defendant having a meritorious defense to cause of action upon which it was rendered, whether his co-defendants do or do not join him in such application.

For the error above indicated, the order reinstating the execution and judgment is reversed and the case is remanded to the Circuit Court with directions to overrule the demurrer to the third amended special plea.

Reversed and remanded, with directions.