James Buttitta and Dominick Buttitta, Appellees, v. G. W. Lawrence and C. F. White, Appellants.

Gen. No. 8,350.

at the October term, 1929. Heard in this court
Opinion filed January 26, 1931.

GREEN & PALMER, for appellants; HENRY I. GREEN, GEORGE E. MARTIN and ORIS BARTH, of counsel.

BOYD & LEONARD, for appellees.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

The appellees, James and Dominick Buttitta as plaintiffs, brought suit against the appellants, Lawrence and White, in an action for fraud and deceit.

The first two counts of the declaration substantially charge that the plaintiffs, the Buttitta brothers, employed the defendant C. F. White to sell or exchange a property on Stoughton Street in Urbana, Illinois, for them; that the defendant White entered into a conspiracy with the defendant G. W. Lawrence to defraud the plaintiffs, and that pursuant thereto the defendants offered to exchange or trade with the plaintiffs for their Stoughton Street property, a vacant lot belonging to the defendant Lawrence, known in the record as the Poplar Street lot, and $1,992.53 worth of notes; that the defendants, Lawrence and White, to induce the plaintiffs to make such exchange, falsely and fraudulently represented and stated to the plaintiffs that the said notes were good and collectible and the makers thereof solvent and responsible; that such statements were false and were known to the defendants to be false, and on the faith of such statements the plaintiffs, relying thereon, deeded their property to Doris G. Lawrence, a daughter of the defendant Lawrence, and as part of the conspiracy and to lull any suspicions of the plaintiffs, the defendant Lawrence told the plaintiffs he would indorse the notes so that he would be liable upon them; that after Lawrence got

the deed to the Stoughton Street property he gave the notes to the defendant White to give to the plaintiffs, and that the plaintiffs did not get the notes or see them until after Lawrence had placed his deed of record; that the plaintiffs, being unable to read the notes or to understand their legal effect, thereafter took them to an attorney and then learned for the first time that $586.55 of said notes were outlawed or barred by the statute of limitations, that the remainder of the said notes were worthless and uncollectible, because of the insolvency of the makers, and that all of the notes were worthless and were indorsed without recourse by the defendant Lawrence; that immediately upon learning these facts they went back to the defendant Lawrence and offered to return to him the notes and deed to the Poplar Street lot. Lawrence refused to do this, and the suit was then brought for the loss occasioned by the fraudulent misrepresentations in regard to the value of the notes.

The only plea was a plea of general issue. The case went to the jury upon the issues raised by the first and second counts of the declaration and the plea of not guilty thereto.

The testimony shows that the plaintiffs did not come to this country until after they were 18 years old. They could not read or write English, except to sign their names. They had worked hard since coming to Urbana in 1920 and were engaged in the shoe repairing business in Champaign. They owned their home at 607 West Stoughton Street, Urbana, which is involved in this deal, had bought a lot in the Chamber of Commerce Addition in Champaign and had each bought a lot on which they were building separate houses at the time of this transaction. They had also purchased about four other properties, but had never sold or traded for any property.

The defendant C. F. White was a real estate dealer who had had many other transactions with the defend-

ant G. W. Lawrence, who was engaged in the furniture business, selling furniture on instalment payments in the City of Urbana, Illinois.

It is undisputed that the plaintiffs were to trade their Stoughton Street homestead on which the Prudential Insurance Company was placing a $5,000 mortgage at the time of this transaction, subject to said mortgage, for the vacant lot on Poplar Street belonging to Lawrence, and approximately $2,000 worth of notes. The only disputed question of fact in the case was whether Lawrence and White conspired together, and, pursuant to this conspiracy, made fraudulent misrepresentations in regard to these notes.

There was no evidence offered by the defendants in regard to the solvency of any of the makers of the notes, or in regard to the value of the notes, although those facts were placed directly in issue by the pleadings and were facts peculiarly within the knowledge of the defendants, from their long possession of the notes. It is the contention of the plaintiffs that the evidence is ovewhelming and practically undisputed that the notes were worthless.

The facts, as shown by the record, are as follows: James Buttitta testified in substance that some time in July the defendant White was in his office on other business and asked him if he could sell their Stoughton Street property for them. Within a day or two of this time he came back and James Buttitta testifies he said: "I believe I got somebody will trade for the house, with a lot on Poplar Street and $2,000 of good notes." Jim asked, "What kind of note is it?" and White replied: "It is judgment note and good note, and the lot is worth $2,000 in a good location, in a good place." White then asked him to look at the lot and told him it was the lot of the defendant Lawrence. They went to talk to Mr. Lawrence about it the next day and again quoting from the record James Buttitta testified: "When we saw Mr. Lawrence I told Mr.

Lawrence what the kind of notes it was. He said what kind of notes he wanted to trade is some notes, $2,000 worth of notes, was a bunch of notes, and I told him, what kind of note it is? He said, 'Boy, it is a good note, that is a customer's note.' Jim asked, 'Can't you let me see them, look at it?' He answered, 'Well, boys, I can't do it. I don't want to show the customers I have sold his notes. I can't do that.' '' All this occurred prior to August 3, 1927. On that date the plaintiffs testified that White came to James Buttitta alone at the shop with two pieces of paper. White handed the two pieces of paper to Jim to sign, and he told him, ''before he signed it if he wanted to know what it was.'' Jim testified that White read it to him, but he read so fast that he couldn't understand it, and he asked White to explain it to him and White said: ''That is the agreement between you and Mr. Lawrence, you want $9,000 for your house, and Mr. Lawrence is to trade you for lot worth $2,000 and $2,000 worth of notes, and the cost of real estate commission, amounting to $330.'' White did not explain to him all the provisions in the written contract. He said nothing about the notes being turned over without recourse. They then went to see Dominick Buttitta, who was laying the brick on his own home on Washington Street. Both Jim and Dominick Buttitta testified that Dominick asked White what the contract was, and that White told him it meant they were trading their property for a lot and $2,000 worth of notes, and that the real estate commission was $330; that White told them that the notes were good, guaranteed notes; that the people had been paying right along and that the notes were absolutely good.

On cross-examination Dominick Buttitta testified that he asked Mr. White to read the paper to him and then asked Mr. White to tell him what the paper meant; that he didn't understand the reading and

asked him to explain the paper, and that what White told him "is not compared with that paper at all."

The matter stood in abeyance at this time because Mr. Lawrence went to Wisconsin and because the Buttittas were having a $5,000 mortgage placed on their property in the Prudential Insurance Company, and the Stoughton Street property was to be deeded to Mr. Lawrence subject to this $5,000 first mortgage.

The plaintiffs were engaged in building new homes for themselves, and wanted to buy two player pianos and trade in an old piano. Since Mr. Lawrence was in this same line of business they decided to buy from him, and while he was in Wisconsin spoke to his daughter about it, and agreed on the price of approximately $1,100.

On September 12, 1927, Mr. White came in and told James Buttitta that Mr. Lawrence was ready to close the deal and it is undisputed that the plaintiffs with Mr. White went to the office of Mr. Lawrence that night. Mr. Lawrence met them at his store somewhere around 10 o'clock. The plaintiffs at once raised the question about paying for the player pianos by turning back part of the $2,000 worth of notes they were to receive in the deal. Mr. Lawrence told them he couldn't do this because he had lost some money in a bank failure in Urbana and because he needed the cash in his business. It is undisputed that the plaintiffs got up and left the store and went out in front, refusing to go further with the deal. The defendant White came out on the sidewalk and urged them to go on and complete the deal and suggested that they could pay $550 for one piano and arrange about the other. They then went back and James Buttitta suggested to Mr. Lawrence that they would pay cash for one piano and would let the other piano sit on the floor for 90 days or so, until they could get the cash. Mr. Lawrence objected to this, however, and asked them to give him

a note for the other piano. They finally agreed to this and did it. The deed of the Buttitta property on Stoughton Street was then delivered to Mr. Lawrence and the plaintiffs asked him for the notes which they were to get and the deed and abstract to the Poplar Street lot. He told them it was so late at night that he would send the notes, deed and abstract over the next day by Mr. White.

The record shows that Lawrence recorded his deed to the Stoughton Street property the next day, September 13, at 10:30 o'clock a. m. He also sold the note for the piano to the Urbana Banking Company, an innocent purchaser, for value. It is undisputed that the defendant White delivered the notes, and a list of the notes to James Buttitta at his shop on September 13. The Buttittas testified he also delivered the deed and abstract at that time.

A few days later, Mr. Showalter, a lawyer who was acquainted with the Buttittas, came in their shop and they gave him the abstract to examine for them, and either gave him or sent the notes to him to look over and arrange for their collection. Mr. Showalter at once sent out a letter to all of the makers of the notes and checked up their financial responsibility at the Champaign County Credit Bureau. Within a week or so he came back to James Buttitta and told him that he was afraid the notes were worthless. Buttitta then gave him the written contract, and after listening to James Buttitta's version of the deal, suggested that they go over at once and see the defendant Lawrence. They made more than one trip before they found Mr. Lawrence in. The first time they found him in, the defendant White was also there. Mr. Showalter told Mr. Lawrence that there must be some misunderstanding about the deal, because the plaintiffs understood they were to get good notes and that Mr. Lawrence would indorse the notes so that he would be responsible

in case the makers did not pay. Mr. Lawrence ordered them out of his place and told them that he had a written contract and that he would stand upon his contract. Mr. James Buttitta became angry with Mr. Lawrence, and counsel for the defendants themselves insisted on the trial that all that occurred be told. James told them, "You lie to me, as soon as you die, you sure go to hell," and he walked out. Both Mr. Showalter and Mr. Lawrence testified that as they talked about the matter there, White spoke up and said, "We figured that all we would make was the commission on the pianos." Mr. Showalter suggested that the fair thing to do would be to trade back all the way around. This Mr. Lawrence refused to do.

There is no evidence in the record that any improvements had been made at the time Mr. Showalter and James Buttitta talked to Mr. Lawrence, and there is no pretense in the evidence that Mr. Lawrence ever stated that he wouldn't trade back because he had made improvements.

The defendants claim that on August 3, 1927, they prepared a typewritten list of the notes in the presence of James Buttitta and that the defendant White and Buttitta went into a booth in Lawrence's store and checked the notes against this list as to the names of the makers and the amounts, and that White gave the notes to James Buttitta to examine for a few days. They claim at that time that the defendant Lawrence and his daughter told the Buttittas that the notes were slow and old and that Lawrence would turn them over only under an indorsement without recourse, and that both White and Lawrence explained in elaborate detail that "without recourse" meant that the notes would be their property, and that they could not come back on Mr. Lawrence for them.

The evidence shows that not a penny was ever collected on the notes themselves; that Mr. Showalter

wrote to all of the makers of the notes without getting any result; that they were placed in the hands of Ernest Duffield, a constable, for collection and that he was unable to collect anything on the notes; that he was acquainted with some of the makers both personally and by reputation and that they were worthless, and that over $500 of the notes were barred by the statute of limitations.

The witnesses for the defendants were Doris G. Lawrence, a daughter of the defendant Lawrence, and two employees who were working for Mr. Lawrence at the time of the transaction, Miss Hartz, a bookkeeper, and I. C. Johnson who was waiting to get some paper to work on one of Mr. Lawrence's houses.

The jury heard all the witnesses on both sides and returned a verdict in favor of the plaintiffs for $1,000. Motion for a new trial was made and the points specified in writing, and the motion was overruled. This appeal followed.

It is contended by defendants that the only charge in the declaration supported by the proofs or any proof, is the charge that defendants represented the notes to be good, and that the expression was one of mere opinion as to value and not an expression of fact upon which fraud and misrepresentation could be based. It is further contended by defendants that plaintiffs cannot recover upon any alleged misrepresentations that have not been pleaded in the declaration, citing various authorities. There can be no question as to the last principle of law stated, but we cannot agree with defendants that their expressions made as to the notes, as charged in the declaration, was a mere expression of opinion as to value. In Pomeroy, vol. 2 of Equity Jurisprudence, sec. 878, the rule was laid down.

"Wherever a party states a matter which might otherwise be only an opinion and does not state it as

the mere expression of his own opinion, but affirms it as an existing fact, material to the transaction, so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule and may be a fraudulent misrepresentation. The statements which most frequently come within this branch of the rule are those concerning value.''

It has been held in various cases that similar expressions, taken in connection with the situation of the parties and the facts in the case, were more than a mere expression of opinion and are sufficient misrepresentations upon which to ground an action of fraud: *Leonard v. Springer,* 197 Ill. 532, 536; *Murray v. Tolman,* 162 Ill. 417, 422; and *Howell v. Wyatt,* 168 Ill. App. 651, 655.

In *Howell v. Wyatt, supra,* the court held: ''Where the vendee is wholly ignorant of the value of the property, and the vendor knows this, and also knows that the vendee is relying upon his (the vendor's) representation as to value, and such representation is not a mere expression of opinion but is made as a statement of fact, which statement the vendor knows to be untrue, such a statement is a representation by which the vendor is bound. *Murray v. Tolman,* 162 Ill. 417; *Custer v. Harmon,* 105 Ill. App. 76; *Hicks v. Stevens,* 121 Ill. 186. It cannot be said as a matter of law that value is never a material fact. Statements of value made in pursuance of a scheme on the part of the defendant constitute fraud and deceit. *Leonard v. Springer,* 197 Ill. 532.''

Under the contract as made, plaintiffs were to convey their house and lot to defendant Lawrence, and Lawrence was to convey to plaintiffs a vacant lot and assign notes to the amount of $2,000, which were represented to be good. The only issue in the case made

was as to the false representations about the notes. There was no question but that defendants knew all about the house and lot and the plaintiffs knew or could see the value of the vacant lot. Defendants assign error because they were not permitted to show the value of plaintiff's house and lot and that it had little value above the mortgage, citing certain cases in Iowa, Michigan and another State to the effect that the damages may be minimized on the result of the entire transaction. This is not the rule in Illinois, nor in the great majority of the States, where it is held that the buyer is entitled to "his bargain" as to all matters about which there is no controversy. (*Drew v. Beall,* 62 Ill. 164, 168; *Antle & Bro. v. Sexton,* 137 Ill. 410, 416; *Bates v. Zybell,* 242 Ill. App. 655.) There was no error in the ruling of the court upon the evidence in question.

It was assigned as error that the court permitted defendant White's statements, outside of the presence of his codefendant, to go to the jury before plaintiffs had introduced proofs establishing the conspiracy. The defendants were joint defendants and the admissions of either of the conspirators, in furtherance of the plan, were admissible against the other and are binding upon them all. (*People v. Covitz,* 262 Ill. 514, 547; *Lasher v. Littell,* 202 Ill. 551, and *People v. Harrington,* 310 Ill. 613, 617).

The order of proof is entirely within the discretion of the court, and when the proofs are all in, if there is no evidence tending to establish a conspiracy then a verdict should be directed in favor of the defendants. In many cases a conspiracy can only be established by the jury taking into consideration all of the proofs and all of the facts and circumstances in evidence. It is urged that White was the agent of plaintiffs to effect the trade, and that any statements made by him were selfserving in aid of plaintiffs. We have yet to learn

that the civil relationship of agency, established, purges the agent of all fraud contemplated or carried out. The court did not err in admitting this testimony.

It is urged that none of plaintiffs' instructions specifically define the charges of conspiracy and fraud in the declaration; however, the instructions given for defendants and their modified instructions do fully and completely advise the jury of every element of the offense charged and the jury were fully advised as to the injury and damage, and the assignment of error cannot be sustained.

Finally defendants assigned error that the verdict was against the weight of the testimony. Apparently, this assignment of error is abandoned, as defendants do not argue it in their brief. The jury heard and saw the witnesses and after reading all of the testimony we cannot see how the jury could have arrived at a different conclusion. The notes turned over by defendants were conditional sales notes, many of them barred by the statute of limitations and all of them, by the proofs, worthless.

We are satisfied that the proofs justify the verdict; therefore, the judgment of the circuit court of Champaign county is affirmed.

Per curiam: The above opinion having been filed in this case and thereafter a rehearing having been granted, upon a full hearing and reconsideration of the cause we adhere to the opinion as originally written, and the judgment of the circuit court of Champaign county is affirmed.

*Affirmed.*