## D. Snively v. John F. Meixsell.

1. APPELLATE COURT PRACTICE—*Effect of Filing an Additional Abstract.*—Where the first abstract filed is not sufficient, but a subsequent one filed by the appellant is, and confesses the omissions of the first one, the court will, in this instance, consider the case upon its merits, not holding, however, that the subsequent compliance with the rule relating to abstracts relieves the appellant from its violation in the first instance.

2. WAIVER—*Of a Demurrer by Pleading Over.*—A party who fails to abide by his demurrer by joining issue after it is overruled, must be held to have waived his rights under the demurrer.

3. FRAUD—*By Vendee—Presumption.*—A party selling property is presumed to know whether the representations he affirmatively makes in respect to it, are true or false; if he knows them to be false it is a positive fraud.

4. SAME—*Untrue Representations of Material Facts.*—An untrue representation of a material fact as one's own knowledge, or recklessly made, not knowing whether it is true or not, is a fraud.

5. SAME—*Expressions of Opinion.*—Where an opinion is designedly false, or an advantage is taken of a party in a manner which is clearly oppressive, without negligence on the part of such party, there may be a fraud, although the statement is in the form of an opinion.

6. SAME—*False Statements as to Values.*—False statements as to the value of property sold when relied upon by the vendee is a representation of a fact and not an opinion.

7. PRACTICE—*Where the Defense of a Failure of Consideration May Be Made.*—Where a false statement is made, although the party contracting may not have relied wholly upon such statement, but in fact may have relied upon it in part, and would not have contracted without it, the defense of a failure of a consideration may be made.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Saline County; the Hon. PRINCE A. PEARCE, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Mr. Justice BIGELOW, dissenting. Opinion filed September 4, 1901.

Statement.—This is an action of assumpsit, brought by appellant against appellee upon a promissory note for the sum of $509.50, made by appellee, and payable to one Richard C. Collier, who, at the time of the delivery of the note to him, was agent of the Mutual Life Ins. Co. of New York.

The note and five dollars were given October 2, 1897, as the first annual premium payment, on what the agent

called a gold bond policy, that the evidence shows he stated could be used the same as a government bond, as collateral security in any bank of the United States for half its face value, and that he, the agent, was the special agent of the company, and the only one who carried and could issue such a policy. Appellee testifies that he relied on such statement, that he wanted no insurance, and bought the policy solely on that consideration.

Before the maturity of the note, Collier indorsed it to appellant, who claims to have purchased it in good faith for a valuable consideration and without notice of any infirmities concerning it.

To the declaration appellee filed the general issue and two special pleas. The first special plea avers that the defendant is not a *bona fide* purchaser of the note for value; that it was obtained " by fraud and circumvention; " that the payee of the note falsely and fraudulently represented to defendant that he would deliver to him a " gold bond life insurance policy," written by the Mutual Life Insurance Company of New York, of such value and character that it would have, from the date of its issue, a value of $5,000 as collateral security. That when the policy was delivered to defendant it had no value as collateral security; that there was no consideration for the delivery of the note.

The second plea avers that the note was obtained through fraud; that there was no consideration for the making of it; and that the plaintiff was not a *bona fide* purchaser for value, before maturity, and without notice of the defendant's defenses. To the first special plea there was a demurrer which the court overruled and plaintiff took issue on all of the pleas. The testimony of appellee shows that the policy was not delivered to him until ten days after he had made and delivered the note; that he attempted, after he got possession of the policy, to use it as collateral security for that amount, at the bank at Harrisburg, where he was told that the policy was useless for any such purpose. Appellee returned the policy to the general agents of the insurance company at Chicago, and it has never been returned

to him.   The trial of the case by jury, resulted in a verdict for the defendant.   There was a motion by plaintiff for a new trial, which was overruled, and plaintiff excepted when judgment was rendered on the verdict.

I. R. SPILMAN, attorney for appellant.

CHOISSER, WHITLEY & CHOISSER, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Appellee insists that judgment should be affirmed for failure by appellant to state in the abstract that exception was taken to overruling motion for new trial and to rendition of judgment; also for failure to recite in full the instructions given and refused; and cites in support, Ettlinger Printing Co. v. Copelin, 76 Ill. App. 520; Dickinson v. Gray, 72 Ill. App. 55; Gibler v. City of Mattoon, 167 Ill. 18; Fireman's Ins. Co. v. Peck, 126 Ill. 494.

We have no disposition to relax the rule as held in these cases, but as appellant has confessed the omissions by filing an additional abstract supplying them, we will consider the case upon its merits, not holding, however, that subsequent compliance with the rule relieves from its violation in the first instance.

In addition to the usual assignments of error, appellant assigns that the court erred in overruling his demurrer to the second plea.   As he did not abide by his demurrer, but joined issue, he must be held to have waived his demurrer. Gray v. Bangs, 138 Ill. 77.

The court gave for appellant the following instruction :

" The court instructs the jury that it is the law that when a note is assigned before maturity for a valuable consideration, and without actual notice to the purchaser of facts and circumstances which might constitute failure of consideration, or fraud and circumvention in the procuring the execution of said note, then the defendant is not allowed to plead such failure of consideration, or such fraud and circumvention in the procuring the execution thereof, and your verdict should be made without regard to such defense."

No instructions were given for appellee conflicting with the law as stated in the above instruction.

We must then conclude *in limine*, that the jury found that appellant was not a *bona fide* purchaser, and that the note was procured to be executed by false and fraudulent statements by the agent Collier, and without the consideration which induced its execution.

The evidence on this issue is conflicting. Collier testifies that it was assigned to appellant with other notes in the regular course of business; that he would send negotiable notes to appellant, who would make advances on them; that he owed appellant for advances, and gave him this note, with others, to apply on what he owed, appellant to charge such discount as he saw fit to charge, and that he received in such payment the full face of the note, less the discount, and was credited on his account for such amount. Appellant testifies that he knew Collier was an insurance solicitor; that Collier owed him for advances; that he received the note as his own and would lose the amount if not collected; that he did not keep an account on his books of the notes received from Collier; that his books do not show the Collier note sued on; that he did not give Collier credit on his books for the note; that he made no entry on his books except for cash; that on the advice of counsel he declined to produce his books; that he declines to state what Collier owes him; that their relations were of the most intimate character. Beggs, an attorney at San Jose, a witness for appellee, who talked with appellant in reference to this note, testifies that appellant said he had no agreement with Collier as to the terms under which he received or handled the notes; that he sent them off for collection; that he gave some of the money to Collier's wife or family; that he did not know the notes were coming; that when money was received he credited Collier's account, but had given no credit for the note. He said the notes were sent to him for collection.

From this evidence the jury must have found for appellee upon the issue involved under the instructions given as to the *bona fide* purchase of the note.

The evidence impresses us with the belief that the finding was right. If their finding upon this issue was right, appellant stands in the shoes of the payee of the note and is subject to any defense that might have been made if the payee had brought this suit.

The vital inquiry in the case then is, was the execution of the note procured through fraud and without consideration.

The testimony of appellant as to what was said to induce the execution of the note is in substance as follows, and not being contradicted, it must be taken as true : That appellant is a farmer, a timberman, and runs an electric plant; that Collier talked life insurance to him several times; that he told him he was carrying all the insurance he wanted and did not care for any more; that " he kept following me round for several days and finally made me a proposition." That he said he was " the special agent; no one had the right or could issue a gold bond policy that he carried that could be used as collateral in any bank in the United States, but that he could. * * * That was what made me give the note. I would not have given it if it had not been for that. I was to get something, to be my own bondsman, and wasn't to have to go to my friends to go on my bond. I was going to be my own banker, and he was the only man in the company that could do that; was special man for that purpose. His representations were just as I have stated. He was to furnish me a gold bond that could be used as collateral security in any bank in the United States, for one-half its face, as soon as it was issued. * * * I relied on his statements or I would not have taken it. He said he was the only man that could do that; that he was a special agent for that purpose, the only man that could handle them."

Question by the Court : " What did you understand was meant by a gold bond ? "

Ans. " Just what he represented it to me to be, that I could use it as collateral the same as I could a government bond. That is the representation that he made all the time, that it was as good as a government bond."

Accepting this uncontradicted evidence of appellant as true, and adopting the conclusion that the jury must have come to, namely, that appellant was not an innocent purchaser for value, we have before us a suit brought upon a note procured to be executed by false and material statements, made by its payee. These statements were that he was a special agent of an insurance company, the only agent that "carried such a bond and could issue it." They were positive statements of the peculiar and exclusive authority of his agency and of the character and value of such bond. They were not opinions as to what would take place in the future. The representation was that he was then "the special agent, the only agent that could issue it," and that "I (appellant) could use it as collateral the same as a government bond in any bank in the United States."

The fact that the gold bond policy was to be delivered in the future, did not relieve the transaction from the false statements as to his authority and its value and utility, nor did it protect the transaction from the legal effect of such fraudulent statements.

They were assertions by one who assumed to know, by one whom appellee had a right to believe did know, and were assertions of conditions then present and existing. Appellee acted upon them. The gold bond policy was not shown to him when he executed the note. He did not receive it until ten days afterward. When he took it to the bank to use it as collateral he found it was worthless for that purpose. This was the only purpose for which he testifies that he bought it, the sole consideration for which he testifies he executed his note.

Appellee then returned the policy to the insurance company, offering to pay for the short time it had run, and rescinded the contract. This he has a legal right to do by placing the other party in *statu quo*.

Fraud vitiates all contracts. Allen v. Hart, 72 Ill. 105, is a leading case. It was an action to recover the consideration paid after tendering back the deed which had been received. In it the court says:

" The fraud that vitiates this transaction consists in the untruthful representations as to the value of the territory. * * * This fact was known to the vendors at the time of the sale, and whether it was or not, it being in fact untrue, it was equally disastrous to the appellee. * * * It will not do to say those were simply expressions of opinion as to the value of the territory to be embraced in the patent deed. They were intended to be and were relied upon as assurance of its value, as an article of trade, and being false, it would be a reproach to the law if it did not afford the injured party redress."

In Borders v. Kattleman, 142 Ill. 103, it is said :

" A party selling property is presumed to know whether the representations he affirmatively makes in respect to it are true or false. If he knows them to be false, it is a positive fraud." * * *

The court say in Hicks v. Stevens, 121 Ill. 197:

" It is held in Allen v. Hart, 72 Ill. 104, that it is not indispensable to a right to rescind a contract, that the party making the representation knew it to be false, provided it is material, and the other party had a right to rely upon it and did so "—and that is believed to be sustained by the weight of authority.

To the same effect is Mexican Amole Soap Co. v. Clarke, 72 Ill. App. 658.

In Murray v. Tolman, 162 Ill. 423, the court quote with approval, Picard v. McCormick, 11 Mich. 68, as follows :

" It is undoubtedly true that value is usually a mere matter of opinion, and that the purchaser must expect that a vendor will seek to enhance his wares and must disregard his statements of their value. But while this is generally the case, yet we are aware of no rule which determines arbitrarily, that any class of fraudulent representations can be exempted from the consequences attached to others. Where a purchaser, without negligence, has been induced by the acts of a cheating seller, to rely upon material state-ments which are knowingly false, and is thereby damnified, it can make no difference in what respect he has been deceived if the deceit was material and relied on. It is only because statements of value can rarely be supposed to have induced a purchase without negligence that the authorities have laid down the principle that they can not usually avoid a bargain. * * * It would be a deserved reproach to

the law if it exempted any specific action when a fact is stated and relied on, whatever may be the general difficulty of defrauding by means of it."

To the same effect and of the right to rescind are Baker v. Rockabrand, 118 Ill. 373; Neil v. Cummings, 75 Ill. 170; Hall v. Fullerton, 69 Ill. 450; Mitchell v. McDougal, 62 Ill. 500; Grimm v. Byrd, 32 Grattan, 293; Kent Co. R. v. Wilson, 5 Houston, 49; Pitts v. Cottingham, 9 Porter (Ala.), 675.

False statement as to value may be shown on plea of want of consideration. Cortel v. Schroeder, 48 Ill. 136; Day v. Milligan, 72 Ill. App. 333.

" An unqualified affirmation amounts to an affirmation as of one's own knowledge." Bullitt v. Farrar, 42 Minn. 8; 6 L. R. A. 151.

An untrue representation of a material fact as of one's own knowledge, or recklessly made, not knowing whether it is true or not, is a fraud. Bullock v. Farrar, *supra;* Criswold v. Gibbie, 126 Pa. 364; Erie City Iron Works v. Barber, 106 Pa. 125; Fisher v. Mellen, 103 Mass. 506.

Expressions of opinion, even, may constitute fraud.

It is said in note to Hedin v. Minn. Med. Ins., 35 L. R. A. 417:

" The general rule is that a mere expression of opinion is not fraud. * * * There are, however, well defined exceptions to the rule. If the opinion is designedly false, or advantage is taken of the other party in a manner which is clearly oppressive, without negligence on the part of the latter, there may be fraud, although the statement is only in the form of an opinion." Grimm v. Byrd, 32 Grattan, 293.

In Reeves v. Corning, 51 Fed. Rep. 774, it is said :

" There is no certain rule by the application of which it can be determined when false representations constitute matters of opinion or matters of fact. Each case in a large measure must be judged upon its own circumstances."

False statement as to the value of property, when relied upon, is a representation of fact and not an opinion. Crane v. Elder, 48 Kan. 259; Olvey v. Jackson, 106 Ind. 286; Busterud v. Farrington, 36 Minn. 320.

When the vendor, with superior means of knowledge, gives a false opinion, upon which the vendee relies, it is actionable fraud.   Collins v. Jackson, 54 Mich. 186; Mont. S. R. Co. v. Matthews, 77 Ala. 357.

When a false statement is made, although the party may not have relied wholly upon the statement to induce the contract, but may have relied upon it in part, and would not have contracted without it, the defense of failure of consideration may be made.   Ruff v. Jarrell, 94 Ill. 480; Safford v. Grout, 120 Mass. 20.

We think the testimony of appellant in the case at bar, even if the statement of the agent Collier is classed as an opinion, brings the case within the exceptions to the rule that opinions by a vendor as to value do not constitute fraud.   His position as agent selling a gold bond policy, for whose sale he represented himself to be the special agent of the company, who alone carried and could issue such bonds, was such a representation as might reasonably induce his vendee to believe that he knew its peculiar value.   The vendor and the vendee did not stand on the same plane. The vendee was a farmer; the vendor, according to his representations, was the special, trusted agent of a company to sell a gold bond policy of a peculiar value and utility. Such representations, whether called statements of fact, or expression of opinion, under the circumstances constitute such fraud as authorized the vendee to rescind the contract.

The point made by appellant that total or partial failure of consideration must be pleaded to assumpsit on a promissory note, is not pertinent in this case, as a failure of consideration is pleaded by appellee's special pleas.   While they may be open to special demurrer, yet, since appellant joined issue on them as pleaded, they must be held to sufficiently set up the defense they purport to state.

While some of the instructions for appellee are not accurately drawn, they do not conflict with those given for appellant, and the instructions as a whole substantially state the law.

The judgment will therefore be affirmed.

MR. JUSTICE BIGELOW dissenting.

I am unable to concur with the majority of the court in affirming the judgment in this case.

At the time the note sued on·was delivered to Collier, and for ten days thereafter, the policy of insurance was not in existence; therefore, what Collier said as to the use of it ·as collateral security, could not have been said about any existing fact, but it was either a promise as to what the ·policy would contain or what its value would be. ·To constitute fraud there must have been an assertion of an existing fact, with knowledge by Collier that it was false at the time the assertion was made. Even if Collier made the promise, as claimed by appellee, and knew that it never would be fulfilled and that he never' intended to fulfill it, such matters do not constitute fraud in this State, as the matter of fraudulent promise is not recognized in our jurisprudence. Gage v. Lewis, 68 Ill. 604; Kitson v. Farwell, ·132 Ill. 327; Murray v. Smith, 42 Ill. App. 548.