John E. Standish et al., Appellees, v. William R. Nicolls, Appellant.

DECEIT—*what representations will sustain action; what not.* Eulogy of the worth of a machine, though the eulogy be extravagant, will not justify an action of deceit, but representations as to what the machine will accomplish, stand upon a different footing and if false will sustain the action.

Assumpsit. Appeal from the Circuit Court of Pike county; the Hon HARRY HIGBEE, Judge, presiding. Heard in this court at the May term, 1910. Affirmed. Opinion filed May 26, 1911. *Certiorari* denied by Supreme Court (making opinion final).

ANDERSON & MATTHEWS and WILLIAM MUMFORD, for appellant.

W. E. WILLIAMS and A. CLAY WILLIAMS, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

On August 20, 1908, appellant and appellees entered into the following contract:

"This indenture made and entered into on this 20th day of August A. D. 1908, by and between W. R. Nicolls of Beaver Dam, Wisconsin, party of the first part, and J. E.

Standish, G. A. Standish and E. L. Hoag, Jr., all of the City of South Milwaukee, Wisconsin, parties of the second part, witnesseth:

"That for and in consideration of the covenants and agreements of the said parties of the second part hereinafter set forth, the said party of the first part covenants and agrees to and with the said parties of the second part to sell to the said parties of the second part for the sum of Six Thousand Dollars ($6,000.00), one H. Channon, 14x22 ft. scraper bucket excavator, the same being the excavator now owned by the said party of the first part, together with all the equipments, and extras for repairs now belonging to said excavator. And also to furnish to the said parties of the second part the amount of 500,000 cubic yards of excavating to do, the work to consist principally or wholly of excavating small drainage ditches, and is all to be furnished within two years after the date hereof.

"The said party of the first part agrees to pay to the said parties of the second part, the sum of ten cents ($0.10) per cubic yard for excavating the 500,000 cubic yards, to be paid in cash, or in town warrants, drainage district warrants, or good notes, according as the said party of the first part gets his pay for the same work.

"And the said parties of the second part covenant and agree to and with the said party of the first part to pay to the said part of the first part the sum of Six Thousand Dollars ($6,000.00) for said excavator and equipments, to be paid as follows, to wit:

"On the signing of this indenture Two Thousand Two Hundred and Fifty Dollars ($2,250.00) is to be paid in cash, and five cents (5 cts.) per cubic yard, or one-half ($\frac{1}{2}$) of the price of all excavating done by said parties of the second part shall be applied upon the remaining or unpaid portion of the price of said excavator until the sum of Six Thousand Dollars ($6,000.00) with interest at the rate of six per cent per annum on all deferred payments has been fully satisfied and paid.

"The said parties of the second part further agree to accept all work of excavating that shall be offered by the said party of the first part and to give a good and acceptable bond for the true and faithful performance of each and every contract offered by the said party of the first part where

bonds are required by the said party of the first part. Said parties of the second part further agree to take no work from other source until after they have completed the excavation of the said 500,000 cubic yards. Said parties of the second part further agree to employ Edward Ferstneau of the town of Calamus, Dodge Co., Wis., to run said excavator during the period of this agreement, and to pay the said Ferstneau not less than sixty-five dollars ($65.00) and expenses, per month of 26 ten-hour days, and to employ John Miller of the town of Calamus, Dodge Co., Wis., as fireman on said excavator during the term of this agreement, and to pay the said Miller not less than fifty dollars ($50.00) and board per month of 26 days.

"The said parties of the second part further agree to have the said excavator insured at once for a term of two years, in some good company for not less than Five Thousand Dollars ($5,000.00) the policy made payable to the said party of the first part in case of loss, so far as his interest shall appear. Said parties of the second part further agree to set up the excavator in a perfect condition and to the satisfaction of the said party of the first part, also to properly and perfectly care for said excavator keeping it in first class running order until it is fully paid for according to the provisions of this indenture."

In pursuance to said contract the excavator was shipped from Beaver Dam, Wisconsin, to New Canton, Illinois, where appellant had secured a ditching contract, and appellees undertook to perform the same until October 5, 1908, when they suspended work and appellant took possession of said excavator and continued in the performance of the ditching contract. Thereafter, appellees brought their suit in assumpsit against appellant to recover the sum of $2,000 paid by them to appellant upon the purchase price of said excavator, together with the cost of preparing the same for shipment, the cost of shipment and the cost of installing the same in place for work.

The declaration contains the common counts and three special counts. The first special count alleges a mutual rescission of the contract. The second special count alleges that appellees were inexperienced in regard to the cost and

manner of operation of excavators, and the construction of drainage ditches, and were without means or financial credit, all of which facts were known to appellant; that appellant had large experience in such matters and falsely represented that the excavator was worth $6,000 and could be dismantled, shipped, repaired and installed at a nominal expense, not exceeding $100; that said excavator was in good repair and could be successfully operated by any person without previous experience; that it could be operated to construct small drainage ditches at a cost of five cents per cubic yard and that the contract price in excess of that amount would be profit and could be applied upon the purchase price; that he had a contract for the construction of such ditches involving many thousand cubic yards, which he would turn over to appellees at said price; that the ground to be excavated was clean and free from stumps and other obstructions; that ten cents per cubic yard for the character of the work to be done was the usual and customary price and he would give appellees the benefit of any better price he could obtain therefor; that said statements were known by appellant to be false and were made by him for the purpose of deceiving appellees and inducing them to purchase said excavator; that said excavator was of a kind not in common use, was located a great distance from where appellees resided and was not readily accessible to inspection; that the value of said excavator and the cost of operating and maintaining the same were not matters of common knoweldge, and appellees had no knowledge thereof other than the representations made to them by appellant; that relying on such representations they paid appellant $2,000 in cash, and at an expense to them of $1,000 dismantled, shipped and installed said excavator and entered upon the work of excavating said drainage ditches; that appellant had contracted to do said work for fifteen cents per cubic yard and did not give appellees the benefit of said price, but fraudulently concealed from them the price he was to receive therefor; that by reason of all said false and fraudulent representations appellees elected to rescind said contract and at the request of appellant surrendered and re-

turned the excavator to him and that he accepted and received the same and has thence hitherto exercised full and complete ownership over the same; that by reason of the foregoing promises appellant became and is liable to pay to appellees the sum of $3,000, etc.

The third special count contains substantially the same allegations and further alleges that appellant represented he would remain in control of the excavator and superintend the proper removal and operation of the same and that one Ferstneau and one Miller were experienced and capable men in that regard and would render appellees honest and capable services as engineer and fireman, respectively; that appellant did not perform his said promises but interfered with and prevented the proper and successful operation of said excavator; that said Ferstneau and Miller were not capable and experienced as represented by appellant and did not render appellees honest and capable service, but designedly and fraudulently connived with appellant to interfere with and prevent the proper and successful operation of said excavator; that by reason thereof appellees elected to rescind said contract and demanded the repayment to them of money so paid out and expended and did then and there surrender and return said excavator to appellant who accepted the same, etc.    General and special demurrers interposed to said declaration were overruled and thereupon appellant pleaded the general issue.    Upon a trial by jury there was a verdict and judgment against appellant for $2,608.26.

It is conceded by appellees that a recovery is not sought upon the contract, but upon a rescission thereof, and that to warrant a recovery they must establish either a rescission by mutual consent of the parties, or such a state of facts amounting to fraud on the part of appellant as justified appellees in electing to disaffirm or rescind said contract and return the excavator to appellant, who received the same as upon such rescission or disaffirmance.    The instructions given to the jury at the instance of appellees were based upon this theory and no criticism of such instructions is made by appellant.    On behalf of appellant it is insisted that there was

no such rescission or disaffirmance of the contract, but that appellees abandoned the excavator and refused to further prosecute the work of excavation, and that appellant repossessed himself of said excavator under the terms of the contract and not otherwise.

It is uncontroverted that the contract set forth in the declaration was freely and voluntarily executed by appellees after a full discussion between the parties of its several provisions, and in so far as it purports to embody the terms of the agreement, it must be held to be conclusive.

Some evidence, consisting of verbal statements alleged to have been made by appellant to appellees prior to and at the time the contract was signed, which evidence tended to contradict and vary the terms of the written contract in substantial particulars, was improperly admitted over the objection of appellant, but we do not regard the error in that regard of sufficient significance to affect the merits of the case. The same may be said as to the admission of evidence of the pecuniary circumstances of the appellees.

The statements shown to have been made by appellant to appellees prior to the execution of the contract to the effect that the excavator was worth $6,000 and that the cost of dismantling, repairing and installing the same would be merely nominal, not to exceed $100, were simply expressions of opinion. Appellant's estimate of the value of the excavator comes within the rule permitting the seller to eulogize the worth of his wares without incurring liability for damages in an action for fraud and deceit or the like. The representations, however, shown to have been made by appellant to the effect that the excavator could be operated, in the work proposed to be done at New Canton, at a minimum expense of five cents per cubic yard, that the ground to be there excavated consisted of sandy loam, was free from stumps and other obstructions, and that the excavator operated in such soil was capable of excavating 800 cubic yards per day, stand upon a different footing under the evidence in the case. Appellant was familiar with the character of the work to be done. He had prepared detailed estimates therefor and had

secured a contract to do the excavating for fifteen cents per cubic yard, being five cents in excess of the amount allowed appellees. He knew that appellees were strangers to the territory, that they had had no practical experience in operating an excavator, and that they relied upon him for a true statement of the situation. Under such circumstances it was incumbent upon appellant to speak the truth if he spoke at all.

There is evidence tending to show, and the jury were not unwarranted in finding, that after the excavator was installed at New Canton appellant on several occasions personally controlled and directed its operation, and that during such times various parts of the excavator were broken by reason of the unusual strain put upon them in an attempt to remove large stumps and other obstructions in the proposed ditch; that while the soil on the surface consisted of sandy loam, the greater part of the material to be excavated consisted of clay known as "blue gumbo," the removal of which was attended with so much difficulty and delay that it was impracticable to excavate more than from 200 to 300 cubic yards per day; that appellant acting in conjunction with Ferstneau and Miller, whom he had procured appellees to employ, sought in bad faith to embarrass them in the prosecution of the work and compel them to abandon the same; that on October 3, 1908, appellant notified appellees that beginning October 5th, they would be required to perform the impossible task of excavating no less than 600 cubic yards of material per day for four days and 700 cubic yards per day for two days, or quit the job and relinquish all their rights under the contract.

On October 5th, appellees, realizing their inability to comply with appellant's demands, and their inability because of appellant's conduct and misrepresentations to prosecute the work without further substantial loss, elected to rescind the contract for the purchase and operation of the excavator and turned the excavator and its equipment over to appellant who accepted the same and proceeded with the work. In the face of the evidence tending to show that

appellant actively engaged and participated in an effort to force appellees to abandon the work, we are not impressed with the claim advanced by appellant that his re-possession of the excavator is to be attributed solely to the contract and in strict compliance with its terms.

It is urged that the allegations of the declaration in respect to the fraudulent representations charged are not sufficiently definite to support a cause of action against appellant. The appellant did not abide his demurrer to the declaration, but waived it as to matter of form by pleading the general issue. The declaration is sufficient after verdict to support the judgment.

As disclosed by the competent evidence the case was properly determined upon its merits and the judgment will be affirmed.

*Affirmed.*