(No. 21605.—

J. F. BRENNAN *et al.* Plaintiffs in Error, *vs.* J. R. PERSSELLI. (THE HARRIS TRUST AND SAVINGS BANK, Defendant in Error.)

*Opinion filed October 21, 1933—Rehearing denied Dec. 7, 1933.*

MOSES, KENNEDY, STEIN & BACHRACH, (WALTER BACHRACH, ARTHUR MAGID, and PHILIP M. GLICK, of counsel,) for plaintiffs in error.

LORD, LLOYD & BISSELL, (JOHN S. LORD, and A. C. WETTERSTORM, of counsel,) for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

J. F. Brennan and eight other persons, partners doing business as Stein, Alstrin & Co., brought an action of assumpsit in the superior court of Cook county against J. R. Persselli. A writ of attachment in aid was issued summoning the National Bank of the Republic of Chicago as garnishee. The bank answered that it carried an account with $12,000 to the credit of Persselli but averred that the M. N. Elsenau Company, a corporation, and the Harris Trust and Savings Bank made claims to the fund. The

court rendered judgment by default against Persselli for $24,850. Shortly thereafter the two claimants filed intervening petitions and these petitions were answered by the plaintiffs. A hearing upon the second amended petition of the M. N. Elsenau Company, the amended petition of the Harris Trust and Savings Bank and the plaintiffs' answers to the petitions resulted in the dismissal of the petitions and the rendition of judgment in favor of the plaintiffs and against the garnishee for $12,000. To reverse the judgment dismissing the intervening petitions and awarding the fund in possession of the garnishee to the plaintiffs,' the intervening petitioners prosecuted separate appeals to the Appellate Court for the First District. The appeals were consolidated for a hearing and the Appellate Court reversed the judgment of the superior court and rendered judgment against the garnishee for $11,000 in favor of the Harris Trust and Savings Bank and for $1000 in favor of the plaintiffs in the assumpsit suit. A writ of *certiorari* was awarded by this court and the record is here for a further review.

The plaintiffs in the assumpsit suit, the partnership of Stein, Alstrin & Co., are stock brokers in the city of Chicago. The defendant in that suit assumed the name of Persselli and his business is not disclosed, except that he sold certain forged stock certificates. M. N. Elsenau Company, a domestic corporation, is engaged in buying and selling securities in Chicago. On or about December 16, 1930, Gus Anders bought from Persselli one thousand shares of class "A," common stock of the Fox Film Corporation at $24 per share, less a discount of $1000 from the whole purchase price. Anders paid Persselli $12,000 on account of the purchase and to enable Anders, among other things, to complete the purchase, the M. N. Elsenau Company agreed to borrow $19,000 from the Harris Trust and Savings bank on the security of the Fox Film Corporation's shares. Persselli delivered to Anders twenty certificates each pur-

porting to represent fifty shares of the stock. These certificates were issued in the name of the purchaser. Anders endorsed the certificates; his signature was guaranteed by Stein, Alstrin & Co. and on December 18, 1930, the certificates were delivered to the M. N. Elsenau Company. On the same day that company borrowed $19,000 from the Harris Trust and Savings Bank upon the former's note made payable January 8, 1931. The payment of this note was secured by the twenty certificates purchased from Persselli. The bank placed the sum borrowed to the credit of the M. N. Elsenau Company. At the request of Anders three checks were drawn by that company, one on December 18, 1930, for $4000, another on the next day for $3000, and the third on December 20, for $11,000. The first and second checks were paid by the bank and charged to the company's account. The third check, payable to Persselli's order, was given to complete the purchase made by Anders. Persselli deposited this check to his credit in the National Bank of the Republic of Chicago, and the check was paid by the Harris Trust and Savings Bank. By this deposit Persselli increased the balance to his credit in the former bank to $12,000. This sum remained intact, when, on December 24, 1930, the attachment writ was served on the National Bank of the Republic as garnishee.

On December 26, 1930, the Harris Trust and Savings Bank ascertained that the certificates of stock pledged as security for the payment of the M. N. Elsenau Company's note were forged. The bank thereupon demanded the return of the $19,000 it had lent that company, but was informed by the borrower that it was unable to comply with the demand. Only $523.80 remained to the credit of the company's account, and the bank applied that sum upon the note it held. No other payment was made in reduction of the note. The Harris Trust and Savings Bank notified the National Bank of the Republic that $11,000 of the deposits in its possession and credited to Persselli had been

obtained from the former bank by fraud and should be retained for it.

The M. N. Elsenau Company demanded of Anders that he refund the money paid on the three checks it had issued at his request and offered to return the forged stock certificates to him. He answered that he was unable to do so. The company also notified the National Bank of the Republic that it was the equitable owner of the proceeds of the check for $11,000 deposited in the bank to Persselli's credit. Anders informed Persselli that the stock certificates were forged and worthless and demanded the return of the $23,000 he had paid for them. Persselli replied that his account in the bank had been attached and that he could refund no part of the money. The market value of class "A," common stock of the Fox Film Corporation, when the forged certificates were deposited as collateral security for the loan to the M. N. Elsenau Company, was $28 per share.

The question to be determined is whether $11,000 of the deposits held by the garnishee to the credit of Persselli should be awarded to the plaintiffs in error, the plaintiffs in the assumpsit suit, or to the defendant in error, the Harris Trust and Savings Bank. The plaintiffs in error contend that the transaction which resulted in the making of the loan by the defendant in error was not fraudulent and hence could not give rise to a constructive trust, and that, in no event, when the state of the pleadings is considered, could rescission for mutual mistake be granted. The defendant in error, on the contrary, contends that because a definite and ascertained portion of the deposits with the garnishee to Persselli's credit was obtained from it by means of fraud, it may disaffirm the loan it made to the M. N. Elsenau Company and have Persselli declared a constructive trustee of the portion of the deposits so derived.

The lien of an attachment does not exceed the actual interest the debtor had in the property at the time of the levy. It does not displace prior rights or equities but is

subject to all the equities to which the property was liable in the debtor's hands. (*Schweizer* v. *Tracy,* 76 Ill. 345; *Walsh, Boyle & Co.* v. *First Nat. Bank of Hiawatha,* 228 id. 446; *Wilson* v. *Kruse,* 270 id. 298). Under section 29 of the Attachment act (Cahill's Stat. 1931, p. 148; Smith's Stat. 1931, p. 177), interpleading by other claimants of the fund sought to be attached is authorized, and the issue is the right of property. (*May* v. *Disconto Gesellschaft,* 211 Ill. 310; *Springer* v. *Bigford,* 160 id. 495; *Juilliard & Co.* v. *May,* 130 id. 87). At the time the writ of attachment in aid was issued, the plaintiffs in error had no legal interest in the funds on deposit with the garnishee to the credit of Persselli.

Reference must be made to pertinent provisions of the Uniform Stock Transfer act (Cahill's Stat. 1931, p. 770; Smith's Stat. 1931, p. 808). By section 11 of the act it is provided that a person who for value transfers a certificate, unless a contrary intention appears, warrants that the certificate is genuine. Section 18 provides that in any case not provided for by the act, the rules of law and equity, including the law merchant, and in particular the rules relating to the law of principal and agent, executors, administrators and trustees, and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy or other invalidating cause, shall govern. By section 22 a purchaser includes a mortgagee and pledgee.

It is well settled that it is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other. (*Noll* v. *Peterson,* 338 Ill. 552; *Wisherd* v. *Bollinger,* 293 id. 357; *Borders* v. *Kattleman,* 142 id. 96; 1 Story's Eq. Jur. (14th ed.) sec. 272). One who, by presenting forged paper to a bank, procures the payment of the amount there-

of to himself, even if he makes no express warranty, in law represents that the paper is genuine, and, if the payment is made in ignorance of the forgery, is liable to an action by the bank to recover back the money which, in equity and good conscience, has never ceased to be its property. (*Leather Manufacturers' Bank* v. *Merchants' Nat. Bank,* 128 U. S. 26; 5 Michie on Banks and Banking, sec. 265). So property obtained by one through the fraudulent practices of a third person will be held under a constructive trust for the person defrauded although the person receiving the benefit is innocent of collusion. If such person accepts the property, he adopts the means by which it was procured; or, as Lord Chief Justice Wilmot said, "Let the hand receiving the gift be ever so chaste, yet if it comes through a polluted channel, the obligation of restitution will follow it." (1 Perry on Trusts and Trustees, (7th ed.) sec. 211; *Ruhe* v. *Ruhe,* 113 Md. 595). In cases of fraud a court of equity will treat the offending party as a trustee and make the property in his possession or under his control subservient to the proper purposes of recompense by way of equitable trust or lien. 3 Story's Eq. Jur. (14th ed.) sec. 1673; 1 Perry on Trusts and Trustees, (7th ed.) secs. 166, 170.

The M. N. Elsenau Company stated in its second amended intervening petition that it obtained the loan from the Harris Trust and Savings Bank as an accommodation to Anders. The defendant in error, in its amended intervening petition, charged that the M. N. Elsenau Company made representation of which it had no knowledge; that these representations were false, and in equity were regarded as fraudulent; that the defendant in error was the equitable owner of $11,000 of the fund in the possession of the garnishee sought to be attached by the plaintiffs in error, and that, in consequence, a constructive trust to the extent of that sum, with the beneficial interest in the defendant in error, would be enforced against the funds held by the

garnishee to Persselli's credit. Representations were made by Persselli to Anders; by Anders to the M. N. Elsenau Company and by that company to the Harris Trust and Savings Bank that the certificates in question were for one thousand shares of Fox Film Corporation class "A," common stock. These material representations were false. The company also represented to the bank that the stock had a market value of $28 per share.

No consideration was paid by the M. N. Elsenau Company for the certificates which it pledged with the Harris Trust and Savings Bank. Anders gave nothing of value to the company for the check drawn on that bank. No part of the loan has been re-paid. The effect of the transaction is that the bank paid to Persselli, the payee in the check, $11,000 and holds only the forged stock certificates as security for the money so advanced. Persselli's credit with the garnishee, to the extent of $11,000, was created by the money which he obtained from the Harris Trust and Savings Bank on the check drawn to his order by the M. N. Elsenau Company. The portion of the fund so created is held for the benefit of the defendant in error and to the exclusion of any right or claim of the plaintiffs in error.

Upon the discovery of the fraud, the Harris Trust and Savings Bank had the right of rescission. (*Doane* v. *Lockwood,* 115 Ill. 490; *Leary* v. *Geller,* 224 N. Y. 56; 3 Black on Rescission and Cancellation, sec. 643). The bank tendered the note and alleged in its petition that it was ready to comply with the requirements of equity and good conscience. The forged certificates were worthless and it was unnecessary for the intervening petitioner to offer to return them. *Brewster* v. *Burnett,* 125 Mass. 68; 3 Black on Rescission and Cancellation, secs. 626, 672; sub-section (*a*), par. 2 of sec. 480, vol. 2, American Law Institute's Restatement of the Law of Contracts, p. 916.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*