MICHAEL F. DUHL *et al.*, Plaintiffs-Appellants, *v.* NASH REALTY INC. *et al.*,
Defendants-Appellees.

First District (4th Division)    No. 80-2787

Opinion filed December 3, 1981.—Rehearing denied January 7, 1982.

Glen H. Kanwit, of Hopkins & Sutter, of Chicago, for appellants.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Andrew Fylypovych, of counsel), for appellees.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

The plaintiffs, relying on the defendant realtors' advice as to the value and saleability of their house, purchased a new house through defendants. When they discovered that the defendants' representations were in error, they sued in fraud, negligence, contract and for violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*). The trial court dismissed the complaint as not stating a cause of action. We agree that the claim for breach of contract did not state a cause of action but reverse as to the other counts.

In deciding whether the complaint states a cause of action we must accept the facts alleged in the complaint as true. (*Faber v. General Telephone Co.* (1974), 19 Ill. App. 3d 135, 311 N.E.2d 281 (abstract), *appeal denied* (1974), 56 Ill. 2d 586.) According to the plaintiff's amended complaint:

The plaintiffs, Michael and Judith Duhl (Duhls), own a home in Winnetka, Illinois. They purchased the home in 1973. Defendant Nash Realty is in the real estate brokerage business and holds itself out as an expert in the field. Defendant Reigel is a licensed real estate broker and an agent of Nash Realty Inc.

On or about March 20, 1979, the Duhls contacted Reigel, whose services they had used when they purchased their home in 1973, and told her they would like to engage her services for the purchase of a new home.[1] Reigel agreed to act as their agent. The Duhls advised her that the price they could pay for a new home depended upon the price at which the present home could be sold, as they did not have any other sources of equity to finance the purchase of a new home. Reigel stated that she had the professional skill and competence to determine the market value of their present home, the price for which it could be sold and the speed with which it could be sold. The Duhls asked Reigel for her professional judgment on these matters, informing her that they had no knowledge of real estate values and were relying on her expertise. After inspecting the Duhls' home, Reigel told them that, in her professional judgment, their home should be listed for $168,000, and that it would be sold very quickly for between $162,000 and $163,000. The Duhls expressed some doubt at this and told her they wanted to know with certainty how much the home could be sold for. They wanted to know the lowest possible price they would get, even if it was likely that the home would be sold for more since

---

[1] In their original complaint which like the amended complaint was verified, the Duhls did not allege that Reigel was engaged as a broker on March 20 but that she was subsequently engaged as broker in reliance on her representations, including her professional opinion and Nash's appraisal.

the proceeds from the sale would be their only source of equity for the purchase of a new home. Reigel stated that she had performed a great number of such appraisals over many years, that she had always been within five per cent of the actual selling price and that her representations as to the market value and speed of sale were correct. Nevertheless, as further confirmation, she promised that she would have Richard Nash, president of Nash Realty, appraise the house. She stated that Richard Nash was a professional appraiser and had the skill and expertise to form a professional opinion as to the precise price at which the home would sell.

In mid-April 1979 Reigel informed the Duhls that Richard Nash had appraised the home and that his professional judgment was that the home had a minimum market value of $158,000 and would sell for at least that amount. She also told them that Nash agreed that the home would be sold very quickly. At the same time, Reigel gave the Duhls a brochure entitled "Seven Reasons You Should Consult a Realtor." The brochure, *inter alia*, stated:

> "2. A REALTOR knows market value. When your property is priced right for the market, you can expect fast action—and full value. A REALTOR knows market value because he stays abreast of all real estate sales transactions as well as economic and social factors which affect property value."

It was alleged in the original complaint that in reliance on these representations the Duhls engaged Reigel and Nash Realty as agents to purchase a new home. But regardless of the date on which their services were engaged, on May 4, 1979, the Duhls purchased a new home in reliance on their representations. (This contract was contingent on their acquiring financing within 14 days.) Reigel advised the Duhls that the house was worth that price and, for resale purposes, was a very desirable home which would always be able to be sold very quickly. The Duhls relied upon these representations as well in deciding to purchase the house and in setting a closing date of July 23, 1979. Nash Realty as agent for the seller earned a commission of $10,920 on the purchase of this new home.

About two weeks later, on May 20, 1979, the Duhls also engaged Nash Realty and Reigel as their exclusive real estate brokers to sell their present home. Following their representations and Reigel's express recommendation at that time, the home was listed for $167,500. During the next two months they did not receive a single offer to purchase the home; indeed, less than five prospective buyers came to look at the house. Early in July 1979, at Reigel's express recommendation, they reduced the asking price to $164,900. Reigel continued to assure them that the house would

be sold for not less than $158,000. The Duhls, however, received no offers to purchase at the reduced asking price. Thereafter, the Duhls obtained independent appraisals as to the value of their home. Without exception, these appraisals indicated that the Duhls' home had been grossly overpriced, and that the market value and price at which the home could be sold was at least $20,000 less than it had been represented to be by the defendant Reigel and Richard Nash. The Duhls conveyed this information to the defendant Reigel, who stated that she suspected that the house had been overpriced by $10,000 (though she had never mentioned this to the Duhls). She continued to hold to the position that the house would sell for at least $158,000.

The Duhls and the defendants agreed, however, to terminate the brokerage contract and on July 27, 1979, the home was listed with Baird and Warner for $144,000; this price was lowered to $137,000 on November 5, 1979. As of the date of the filing of the amended complaint (April 3, 1980) the plaintiffs had still not received any offers to purchase the home. Because of the defendants' misrepresentations, the Duhls were forced to put the new house up for sale. The initial asking price was $185,000; this was reduced to $177,000 on November 5, 1979. As of the date of the amended complaint, plaintiffs had received no offers to purchase the new house at either price. As a direct result of defendants' false representations, the Duhls have been injured in that:

1. they have been forced to incur substantial and continuing costs of owning two residences, including a complete refinancing of their loans on disadvantageous terms;

2. they purchased a home in excess of what they could finance, since the present house did not have the value represented; as a result they will be forced either to sell the new home at a loss, including a broker's commission, or to incur additional borrowing costs;

3. they were deprived of an opportunity to sell their present home at a price approximating its true market value in May through July 1979 because it was overpriced. The price it will ultimately be sold for will be less than it could have been sold for in May 1979 had its true value been accurately represented.

The complaint was in four counts, seeking recovery in (1) breach of contract, (2) fraud and deceit, (3) negligent misrepresentation, (4) violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*). The court granted the defendants' motion to dismiss all four counts.

## I

■■ In their claim for breach of contract plaintiffs contended that defendants, having been engaged as real estate brokers in the purchase of

a home, agreed to determine the market value and lowest price at which the home would sell and the length of time needed and breached the contract by their false representations. The plaintiffs have cited no cases for their contention that false representations can constitute a breach of such a contract and we have found none. According to the complaint, the defendants agreed to value the property and did indeed value the property. If they erred in the value, the remedy properly lies in tort. Accordingly we affirm the trial court's dismissal of this count.

## II

In count I of the complaint, plaintiffs alleged that Reigel and Nash Realty, intentionally and in reckless disregard of the truth, falsely represented that:

(a) Reigel was a professional real estate broker in whom the Duhls could place their trust, who knew real estate values and could determine the true market value of their present home, the price at which it could be sold and the speed with which it would sell;

(b) Richard Nash was a professional appraiser, an expert in real estate values, in whom the Duhls could place their trust and that Nash had the ability to determine the minimum market value of the Duhls' present home, the lowest price at which the Duhls' present home could be sold and the speed with which it would sell;

(c) the Duhls' present home had a minimum market value of $158,000 and would sell for at least that amount;

(d) the home should be listed for $168,000 and would be sold very quickly;

(e) the new residence was worth $182,000 and was a type of house which would always sell very quickly;

(f) the Duhls' present residence should continue to be listed at $164,900 and would be sold for not less than $158,000 even though Reigel believed it was overpriced by $10,000.

Plaintiffs further alleged that these representations were made in breach of defendants' fiduciary capacity as their agents in order to induce Duhls to purchase a new home and to sell their present residence; Duhls relied upon these representations in purchasing a new home with the expectation that the new home could be sold quickly for $158,000 and in continuing to list the home at the recommended asking price and that this reliance was reasonable as the truth or falsity of the representations was a matter solely within the knowledge of the defendants. In moving to strike this count, defendants contended that plaintiffs failed to allege (1) that there was any misrepresentation made of a statement of fact, (2) that the alleged misrepresentation was not related to future or contingent events, and (3) that there was an intent to deceive on the part of defendants.

■■ Generally a mere expression of opinion will not support an action for fraud. (*Parker v. Arthur Murray, Inc.* (1973), 10 Ill. App. 3d 1000, 295 N.E.2d 487, *appeal denied* (1973), 54 Ill. 2d 593.) Statements as to the value of property, particularly statements made by the seller, are often treated as mere expressions of opinion and if so intended and understood, fraud may not be predicated thereon. (*Scott v. Wilson* (1957), 15 Ill. App. 2d 456, 146 N.E.2d 397 (abstract); *Standish v. Nicolls* (1911), 162 Ill. App. 131, *cert. denied.*) However, where the representation as to value is not a mere expression of opinion but is made as a statement of fact for the listener to rely upon, the representation is treated as a statement of fact and the speaker is bound thereby. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040; *Auman v. McKibben* (1913), 179 Ill. App. 425; *Howell v. Wyatt* (1912), 168 Ill. App. 651; and see *Nicosia v. Riley* (1957), 13 Ill. App. 2d 247, 141 N.E.2d 663 (abstract).) As stated by the Illinois Supreme Court in *Buttitta v. Lawrence* (1931), 346 Ill. 164, 173, 178 N.E. 390, 393:

> "Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, so that the other party may reasonably treat it as a fact and rely upon it as such, then the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation. Statements of value are common examples, and where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him such statements constitute fraud and deceit."

And in *Yeoman v. Sherry* (1935), 10 Cal. App. 2d 567, 572, 52 P.2d 555, 557, the court stated:

> "It is settled also that a misrepresentation of value may be a misrepresentation of a matter of fact, and not the mere opinion of a broker. In the case of Reton v. J. D. Millar Realty Co., 132 Cal. App. 708, at page 711, [23 P. 2d 419, 420], the court says: 'Appellant contends that the representations as to value were merely matters of opinion, and hence not actionable. * * * It is true that a bare and naked statement as to value is ordinarily deemed the opinion of the party making the representation. [Citation.] On the other hand, such statement may be a positive affirmation of a fact, intended as such by the party making it, and reasonably regarded as such by the party to whom it is made. When it is such, it is like any other representation of fact * * *. * * * *' "

Likewise it was stated in *F. H. Smith Co. v. Low* (D.C. App. 1927), 18 F.2d 817, 819:

"The misrepresentations alleged in the declaration were actionable. They consisted in part of statements concerning existing facts and conditions. Some of these were statements of value, which generally are understood to be mere expressions of opinion. Such a statement, however, when 'made under conditions which show that it was intended' by one uttering it 'to be treated as an immediate factor inducing action, and was made with knowledge that it would be accepted as a basis of action, instead of a mere element to be investigated before action, it becomes for all practical purposes a statement of fact.' [Citation.]"

And see *Mercer v. Parker* (1928), 124 Or. 89, 262 P.2d 948.

Moreover, we must note that whether something is termed a fact or an opinion is not necessarily conclusive as to whether the statement is meant to be understood as one upon which the listener can rely. As aptly pointed out by Prosser, in the Handbook of the Law of Torts §109, at 726-27 (4th ed. 1971):

"* * * [I]t has been recognized very often that the expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it. There is quite general agreement that such an assertion is to be implied where the defendant holds himself out or is understood as having special knowledge of the matter which is not available to the plaintiff, so that his opinion becomes in effect an assertion summarizing his knowledge. Thus the ordinary man is free to deal in reliance upon the opinion of an expert jeweler as to the value of a diamond, of an attorney upon a point of law, of a physician upon a matter of health, of a banker upon the validity of a signature, or the owner of land at a distance as to its worth, even though the opinion is that of his antagonist in a bargaining transaction. On the same basis it has been held that statements by a seller as to the capacity of the thing sold, or the condition of land, or other matters, which on the part of one without special knowledge would be regarded as mere opinion, may be relied on as statements of fact."

■■ Accordingly, accepting plaintiffs' allegations as true, it follows that the defendants' representations in this case could be found to have been meant by the parties to be understood as statements of fact to be relied upon rather than as expressions of mere opinion to be accepted solely as such.

■■ As to defendants' second contention, while misrepresentations as to something to be done in the future generally do not constitute fraud (*McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50), a statement of matters in the future, if affirmed as a fact,

may amount to a fraudulent misrepresentation if it amounts to an assertion of fact. (*Louis v. Louis* (1970), 124 Ill. App. 2d 325, 260 N.E.2d 469, *appeal denied* (1970), 44 Ill. 2d 587.) In any event, the representations here related not to future events but to the current value of the two houses and the current state of the market.

■■ Defendants' third contention is that the plaintiffs failed to allege any intention to deceive. While we agree that plaintiffs' allegations as to *scienter* are less than ideal, in light of the fact that allegations are only required to inform the defendants of the nature of the claim (Ill. Rev. Stat. 1979, ch. 110, par. 42(2)), we conclude that the contention that the defendants acted intentionally and with reckless disregard of the truth is sufficient. A party is considered to intend the necessary consequences of his own acts. (*Posner v. Davis* (1979), 76 Ill. App. 3d 638, 395 N.E.2d 133.) Accordingly, one who knowingly makes a false statement to another who relies thereon is guilty of fraud regardless of the defendant's motive and the plaintiff is not required to prove an express fraudulent intent. (*Case v. Ayers* (1872), 65 Ill. 142; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89; *John V. Farrell Co. v. Nathanson* (1900), 99 Ill. App. 185.) And knowledge of wrongdoing sufficient to support an action for fraud exists where representations which are in fact false are made in reckless disregard of their truth or falsity. (*Hurley v. Frontier Ford Motors, Inc.* (1973), 12 Ill. App. 3d 905, 299 N.E.2d 387, *appeal denied* (1973), 54 Ill. 2d 597; *Solazzi v. Casola* (1952), 345 Ill. App. 407, 103 N.E.2d 164 (abstract); *Tone v. Halsey, Stuart & Co., Inc.* (1936), 286 Ill. App. 169, 3 N.E.2d 142; *Snively v. Meixsell* (1901), 97 Ill. App. 365.) Likewise statements made in culpable ignorance of their truth or falsity are fraudulent. (*Oltmer v. Zamora* (1981), 94 Ill. App. 3d 651, 418 N.E.2d 506.) Indeed, it has been held that good faith is no defense where the fraud and deceit practiced consist, as here, of making false statements of fact as to the knowledge of the speaker. (*Brennan v. Persselli* (1932), 266 Ill. App. 441, *aff'd* (1933), 353 Ill. 630, 187 N.E. 820; *National Bank v. Hamilton* (1916), 202 Ill. App. 516.) As the Illinois Supreme Court remarked in *Brennan v. Persselli* (1933), 353 Ill. 630, 635, 187 N.E. 820, 822: "it is immaterial whether a party misrepresenting a material fact knows it to be false or makes the assertion of the fact without knowing it to be true, for the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other."

■■ The defendants in their brief also contend that the plaintiffs had no right to rely on defendants' representations, both because they could have inquired elsewhere and because admittedly they were skeptical of Reigel's first appraisal. This is a question of fact for the jury to decide, particularly in light of the subsequent repeated representations by Reigel as to the reliability of her statements and the second appraisal by Nash.

Indeed, it might be concluded that in light of these representations the defendants are barred from contending that plaintiffs should not have relied on the advice—one should not be allowed to hold oneself out as an expert whose statements or advice is to be relied upon and then, after someone else has relied on that advice to his detriment, say "You should not have believed me." The defendants cannot complain of the plaintiffs' reliance where the defendant inhibited any inquiries by lulling them into a false sense of security. *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 390 N.E.2d 393; *Miller. v. John* (1903), 111 Ill. App. 56, *aff'd* (1904), 208 Ill. 173, 70 N.E. 27.

### III

In count II of their complaint the plaintiffs alleged that defendants were engaged by plaintiffs to purchase a new home, and to advise them as to the market value of their present home, the lowest price at which it could be sold and the speed with which it could be sold; that defendants held themselves out to plaintiffs as experts in the real estate field in whom they could place their trust and confidence and rely upon to perform these services; that defendants failed to exercise that degree of care and competence reasonably required of them and negligently made the false representations already set forth in count I; that these representations were made by defendants in their fiduciary capacity as agents in order to induce them to purchase a new home and to sell their present residence; that defendants intended and expected plaintiffs to rely on these representations and plaintiffs did so rely and in so relying acted reasonably and with due regard for the protection of their own interests since the truth or falsity of the representations was a matter solely within the knowledge of the defendants. Defendants in their motion to dismiss contended that:

1. in the original verified complaint, which is binding on plaintiff, all of the statements occurred prior to the existence of any agreement and were the inducement to enter into the agreement (this is only partially true since plaintiffs also sought to recover for misrepresentations made after mid-April). Keeping in mind the admissions of the original verified complaint, the amended complaint does not state a cause of action for negligent misrepresentation because the plaintiffs have failed to show:

    a. the existence of any duty owed to them by defendants;

    b. the breach of any such duty.

2. in any event plaintiffs were contributorily negligent as a matter of law.

Patently in a complaint the plaintiff is not required to "show" anything; plaintiff is only required to allege such facts as would reasonably inform defendant of the nature of the cause of action. Ill. Rev. Stat. 1979, ch. 110, par. 42(2).

■■ Illinois recognizes that an action for negligent misrepresentation is maintainable if the complaint alleges the necessary elements of an action for negligence. (*Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623; *McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50.) These elements are a duty owed by defendants to plaintiffs, a breach of such duty, and injury resulting proximately from such breach.

■■■ Defendants contend that they had no duty to plaintiffs because at the time the representations were made (or at least the majority of them) there was no brokerage agreement between the parties and that absent such relationship there could never be any duty to plaintiffs. This contention is obviously erroneous, and the cases relied on by defendants (*City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477; *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724; *Pawlowic v. Pearce* (1965), 59 Ill. App. 2d 153, 207 N.E.2d 155) do not so state. While special duties may arise out of a brokerage relationship, the fact a person is a real estate broker does not exempt him or her from normal rules of negligence law, and it is elementary tort law that when one undertakes to perform a task, one assumes the duty to use proper care in the performance of the task. (Prosser, Handbook of the Law of Torts §56 (4th ed. 1971).) Here, accepting the allegations of the complaint, the defendants undertook to evaluate the plaintiffs' property and to advise them as to what price it could be sold for and how quickly. Not only did the defendants undertake the task, but they repeatedly represented their expertise in the field and their ability to make valuations and representations which could be relied upon. Having undertaken this, defendants had a duty to plaintiffs not to act negligently in rendering this service.[2] This conclusion is reinforced by *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 325, 214 N.E.2d 612, 617, *appeal denied* (1966), 33 Ill. 2d 627, which endorsed the American Law Institute's stance on what constitutes negligent misrepresentation:

> " ' "One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if
> ' "(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and
> ' "(b) harm is suffered

---

[2] As pointed out by Prosser in his Law of Torts §107 (4th ed. 1971), one who gives curbside advice when it is requested by one who is not a client is only required to give an honest answer. We agree. But that was not the situation here.

' "(i) by the person or one of the class of persons for whose guidance the information was supplied, and

' "(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith." Restatement, Torts, Sec 552.' "

The defendants, in the course of their business, supplied information for the guidance of plaintiffs in their business transaction of buying and selling a house and allegedly failed to exercise proper care and competence in obtaining the information. Harm was suffered by the persons to whom the information was supplied because of justifiable reliance encouraged by the defendants.

■■ The defendants' contention that plaintiffs were contributorily negligent as a matter of law in buying one house before they put the other up for sale is premature. A motion to dismiss under section 45 of the Civil Practice Act is used to attack defects in a pleading, and not to test the plaintiffs' ability to recover where the complaint adequately states a cause of action. Furthermore, as this court has repeatedly stated, contributory negligence is nearly always a question for the trier of fact and not for the court to decide. *Borus v. Yellow Cab Co.* (1977), 52 Ill. App. 3d 194, 367 N.E.2d 277.

## IV

Section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 262) provides in part:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

The defendants moved to dismiss plaintiffs' claim under the Act contending that the plaintiffs failed to show that there was any misrepresentation made of a statement of fact, and that the alleged misrepresentation was not related to future or contingent events and that there was an intent to deceive. These are the identical objections raised as to the fraud count (except that here defendants contended plaintiff failed to "show"; a

contention which, as already pointed out, is clearly improper and insufficient in a motion to dismiss). This court has already ruled, in the discussion of the fraud count, that the complaint did allege an intentional misrepresentation of a present fact. More importantly, however, none of these elements is required by the Act.

Section 2 of the Act (which was held to apply to misrepresentations by real estate brokers to prospective purchasers in *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448), indicates a decisive move on the part of the Illinois legislature to enact broad protective coverage of consumers from the many types of deceptive or unfair selling and advertising techniques used by businesses. (*American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370.) The sections clearly expand the consumers' rights beyond those of the common law (*Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183), and provide broader consumer protection than does the common law action of fraud. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040; *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370; *American Buyers Club v. Hayes* (1977), 46 Ill. App. 3d 270, 361 N.E.2d 1383.

■■ Since the Act affords even broader consumer protection than does the common law action of fraud, it is clear that a plaintiff suing under the Act need not establish all of the elements of fraud as the Act prohibits any deception or false promise. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) And it is clear from the language of the Act, particularly its reference to false promises, that liability is not limited to existing material facts. Furthermore, it is well established that under the Act the intention of the seller (his good or bad faith) is not important and a plaintiff can recover under the Act for innocent misrepresentations. *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448; *American Buyers Club v. Honecker* (1977), 46 Ill. App. 3d 252, 361 N.E.2d 1370; *American Buyers Club v. Hayes* (1977), 46 Ill. App. 3d 270, 361 N.E.2d 1383.

For the foregoing reasons, the judgment of the trial court dismissing the claim in contract is affirmed. However, the dismissal of the other counts is reversed and the case remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

JOHNSON and LINN, JJ., concur.